632 So.2d 904 (1994)
John S. BROWN, Plaintiff-Appellant,
v.
BLUE GRASS LIQUOR COMPANY, Defendant-Appellee.
No. 25552-CA.
Court of Appeal of Louisiana, Second Circuit.
February 23, 1994.
*906 Wilkinson, Carmody, Gilliam & Hussey by Mark E. Gilliam, Shreveport, for plaintiff-appellant.
Blanchard, Walker, O'Quin & Roberts by Robert A. Dunkelman, Shreveport, for defendant-appellee.
Before LINDSAY, HIGHTOWER and STEWART, JJ.
STEWART, Judge.
Plaintiff, John Brown, was injured during his employment with defendant, Blue Grass Liquor Company, on August 27, 1990. Blue Grass paid workers' compensation benefits from September 5, 1990 until April 16, 1991, when it determined that Brown received income from his sister's closely held corporation, Citadel, Inc.
After an administrative hearing, the hearing officer found that the money paid to Brown by Citadel constituted wages and not gifts or loans as contended by Brown. The hearing officer also determined that Brown's inability to provide consistent and reliable testimony about the details of his injury raised serious doubt about his disability and unemployability due to the instant accident. Brown appeals. We reverse on the issue of disability and entitlement to benefits, and remand for calculation of supplemental earnings benefits (SEB).

*907 FACTS

John S. Brown had been treated for back injury for several years before he began his employment with Blue Grass Liquor Company in 1985. In March 1988, Brown had a work-related accident which injured his lower back. Brown returned to work about two months later and worked until he was again injured on August 27, 1990 while pulling a load of beer over a curb. Brown received workers' compensation benefits for this August 1990 injury beginning in September 1990. On April 16, 1991, Blue Grass Liquor terminated payment of benefits because it determined that Brown was working for Citadel.
Brown filed this claim for additional workers' compensation benefits against Blue Grass Liquor and its insurer, Louisiana Employers Safety Association. At the hearing, Brown presented evidence that a work-related accident occurred in August 1990. He asserted that the termination of benefits was arbitrary because defendants had no medical evidence which indicated that he could return to work. Defendants presented evidence that Brown rendered services for and received income from Citadel. Brown contended that the income he received from Citadel was either gratuitous help from his sister, or loans, but was not earned income.
The administrative hearing officer concluded that Brown failed to establish that he has been unable to return to work at 90 percent or more of his pre-accident wages. The hearing officer also found as a fact that the income was for work he performed and was therefore wages. Finding "serious doubt as to the claimant's contentions of continued disability and unemployability as a result of the August 1990 accident," the hearing officer denied Brown's claim for additional workers' compensation benefits after April 16, 1991.
Brown appeals, asserting that the hearing officer erred in her conclusion that Brown failed to establish his inability to work, and in her determination that the income from Citadel was wages. We agree with Brown as to proof of his inability to work at 90 percent or more of his pre-injury wages, but disagree regarding the hearing officer's classification of his income from Citadel, Inc.

DISCUSSION
Brown urges that the occurrence of the August 27, 1990 work-related accident and its resultant disability is shown through the testimony of co-worker, James Wedgeworth, Jr., and treating physician Dr. James Lee Ethredge. Thus, Brown contends that he met his burden by showing that this work-related accident resulted in a disabling injury. We agree.

Disability: Legal Principles
The claimant in a workers' compensation case has the burden of establishing his disability and its causal relation with the employment accident by a preponderance of the evidence. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La. 1985); Gonzales v. Babco Farm, Inc., 535 So.2d 822 (La.App. 2d Cir.), writ denied, 536 So.2d 1200 (La.1988). Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. In order for the employee to recover, it must be determined that the employment somehow caused or contributed to his disability, but it is not necessary that the exact cause be found. Walton and Gonzales, cited supra.
A claimant's disability is presumed to have resulted from an accident if before the accident he was in good health, but commencing with the accident the symptoms of the disabling conditions appear and continuously thereafter manifest themselves, providing either that there is sufficient medical evidence to show there is a reasonable possibility of causal connection between the accident and the disabling condition, Allor v. Belden Corporation, 393 So.2d 1233 (La. 1981); Lucas v. Insurance Co. of N.A., 342 So.2d 591 (La.1977), or that the nature of the accident, when combined with other facts of the case, raises a natural inference through human experience that such a causal connection exists. Haughton v. Fireman's Fund American Insurance Cos., 355 So.2d 927 (La. 1978); Dunn v. Allen Pulpwood, 565 So.2d 516 (La.App. 2d Cir.1990); Patterson v. GNB *908 Battery, Inc., 569 So.2d 640 (La.App. 2d Cir. 1990), writ denied, 573 So.2d 1134 (La.1991); Walton and Gonzales, cited supra.
An employee's pre-existing disease or infirmity does not disqualify his workers' compensation claim if the work-related injury either aggravated or combined with, the disease or infirmity to produce the disability for which compensation is claimed. When a claimant proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, a claimant's work injury is presumed to have aggravated, accelerated or combined with any pre-existing disease or infirmity to produce his disability. Haughton, Walton, Dunn, and Patterson, cited supra.
Whether the claimant has carried his burden of proof and whether the plaintiff's testimony is credible, are questions of fact to be determined by the trier of fact. It is well settled that a court of appeal may not set aside a trial court's factual determination in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Gonzales, supra. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell at 845; Stobart v. State Through the Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993).

Disability: Operative Facts
The administrative hearing officer indicates in her opinion that the contradictions and inconsistencies in Brown's testimony cast doubt upon the extent of his disability and his ability to work. However, even assuming that Brown's testimony is wholly discredited, the record contains the following evidence:
James W. Wedgeworth, Jr., a co-worker who was with Brown at the time of the alleged accident, testified by deposition that he and Brown were delivering cases of beer to a grocery store in Bossier City on or about August 27, 1990. They had to pull a loaded dolly of beer up a 10 to 14 inch curb. A loaded dolly contained fifteen cases of beer. When Brown got to the curb with his loaded dolly, Brown screamed and Wedgeworth saw beer "go everywhere". Brown grabbed his back and stood there for a moment, then tried to help pick up the beer, but Wedgeworth ended up having to do so. Brown appeared to be in pain and, because he was unable to do even light work for the rest of that workday, Wedgeworth did the bulk of the remaining work alone. The alleged accident was reported timely, as evidenced by an Employer's report of occupational injury, dated August 29, 1990.
Dr. James Lee Ethredge testified by deposition that he examined Brown on August 30, 1990, and that in his opinion, Brown's previous back injury was aggravated by a recent injury consistent with Brown's alleged attempt to pull a load of beer over a curb. A MRI test was done on October 23, 1990. The results indicated that Brown had degenerative discs, or weak discs, in his neck and back. Dr. Ethredge testified that these discs are more sensitive to pressure and awkward positions than a normal disc.
On November 8, 1990, Dr. Ethredge gave Brown the following permanent restrictions: 50 pound maximum lifting, with 25 pounds more occasional lifting; avoid repetitive bending and lifting. In Dr. Ethredge's opinion, these restrictions precluded Brown's return to his previous work. During his October 22, 1992 testimony, Dr. Ethredge stated that he would add a restriction prohibiting overhead work, as well as prolonged sitting or standing without change of posture, and that Brown should not work with his neck in flexed or awkward positions such as a mechanic would have to do. No other medical testimony was presented.
Even excluding Brown's testimony, the preponderance of the evidence is that Brown carried his burden to establish, prima facie, that he sustained a work-related injury in August 1990 which aggravated his pre-existing back injury and which rendered him unable to return to his pre-injury employment.
*909 Once a claimant establishes the prerequisites to apply the presumption of causal relationship, the employer has the burden of producing evidence to persuade the trial court that it is more probable than not that the work injury of which the employee complains did not result from the accident or did not accelerate, aggravate, or combine with the pre-existing disease or condition to produce the disability. Walton, and Patterson, cited supra.
Dr. Ethredge provided the only medical testimony. Dr. Ethredge testified as follows about the extent to which Brown's disability was due to the previous injuries rather than the August 1990 accident.
The patient, I thought at that point had a permanent physical impairment to his body as a whole of 15 percent for his lower back and 6 percent for his cervical spine. And I used the AMA Guide to combine these for a permanent physical impairment to his body of a whole of 20 percent. Now out of this 20 percent, I estimated 75 percent of this was pre-existing and the other 25 percent the result of aggravation of his recent accident injury.
When questioned by defendants' counsel, Dr. Ethredge indicated that this estimate was based upon his observation that Brown has returned to work after previous accidents and injuries. He stated that repeated injury does progressively more damage. Ethredge testified that he did not think the August 1990 accident caused the major part of Brown's disability, but he thought it contributed to the disability.
Brown completed high school education and entered the United States Army for three years. He then went to college for part of a year, after which he worked in the areas of delivery and sales for Midwest Farms (dairy products), ConAgra (fresh poultry), and Blue Grass Liquor. Each job he had held involved essentially the same type of lifting, bending, and pulling as was required for his job with Blue Grass Liquor. The record reveals that Brown earned $397 weekly at the time of the accident. The record also reveals that, in 1990 and 1991, Citadel paid Brown $1,808 and $3,480, respectively. Once a month, during February through July 1991, Brown traveled to a job site where Citadel installed specialized medical equipment. He was paid $50 per day just for going, and $75 to $100 per day of the actual installation process. There is evidence to support the hearing officer's determination that these payments constituted wages. Accordingly, we do not disturb the hearing officer's classification of these payments to Brown. Nevertheless, the record reveals that this employment was occasional and was not full time. The installations averaged two to four days each, with a day or two of travel time to some of the sites. Accordingly, we find that Brown has shown, prima facie, that he is unable to earn at least 90 percent of his pre-injury wages.
This record does not support the hearing officer's conclusion that (1) inconsistencies in Mr. Brown's testimony, together with Dr. Ethredge's testimony by deposition, do not support a conclusion that Brown has been unable to return to work at 90 percent of his pre-accident wages as a result of the August 1990 accident, or that (2) Brown's lack of credibility casts doubt upon his continued disability and unemployability as a result of the August 1990 accident. Accordingly, we find that a reasonable factual basis does not exist for this finding and that the finding is clearly wrong. We reverse and render judgment in favor of Brown and against defendants on the issue of disability.

Supplemental Earnings Benefits
We now turn to examine whether Brown is entitled to workers' compensation benefits pursuant to LSA-R.S. 23:1221. These facts do not fall within the categories of temporary or permanent total, or permanent partial, disability. Therefore we shall address only the question of Brown's entitlement to supplemental earnings benefits (SEB).
The claimant in an SEB case must prove by a preponderance of evidence that his work-related injury rendered him unable to earn 90 percent of his pre-injury wages. Barton v. Wausau Insurance Co., 545 So.2d 1248 (La.App.2d Cir.1989); Duncan v. State, DOTD, 556 So.2d 881 (La.App. 2d Cir.1990). Once the SEB claimant establishes *910 his prima facie case, the burden shifts to the employer to show that the claimant is physically capable of work and that the work was offered or available in the reasonable geographic region. Barton, supra; Williams v. Avondale Indus., Inc., 521 So.2d 491 (La.App. 4th Cir.1988). If the employer meets this burden, then the employee must show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial pain. LSA-R.S. 23:1221(3)(c)(ii).
As discussed above, Brown has proven by a preponderance that the August 1990 work-related accident rendered him unable to earn 90 percent or more of his pre-injury wages. Therefore, the burden shifted to defendants to show that Brown is physically capable of work and that the work was offered or available in the reasonable geographic region. Defendants showed that Brown was paid by Citadel for travel and for going to get tools or meals, and occasionally handing someone a screwdriver, during the latter part of 1990 through July 1991. The record shows, however, that Brown has not worked for Citadel since July 1991.
For the time period prior to August 1991, Brown is entitled to SEB equal to 66 2/3 percent of the difference between the average monthly wages at the time of injury and average monthly wages earned for each month he received income from Citadel. See LSA-R.S. 23:1221(3)(a) and (b). There has been no showing that work, which Brown could physically perform, was offered or available at 90 percent or more of his pre-injury wages, or that he is physically able to perform his pre-injury duties. Thus, for the time period after July 1991, Brown is entitled to SEB pursuant to LSA-R.S. 23:1221(3)(d)(i), for a period not to exceed 520 weeks.

CONCLUSION
The record supports the hearing officer's conclusion that Brown received wages for services he performed for Citadel, Inc. However, there is no support for the conclusion that Brown failed to show either a work-related accident or the resultant disability and inability to perform work at 90 percent or more of his pre-accident wages. Accordingly, the judgment of the hearing officer is reversed. Costs of this appeal are assessed against defendants.
Brown is entitled to SEB for the time period beginning with his work for Citadel. By that point, he was no longer temporarily totally disabled. Defendants paid workers' compensation benefits to Brown from September 1990 until April 16, 1991. However, the record does not detail the monthly amounts which Citadel paid to him in 1990, or the dates of travel or installation. For this reason, this court does not have sufficient information to calculate the amount of SEB due during the initial months of Citadel's payments to Brown. We remand the case for evidence, as necessary to perform these calculations, and for entry of judgment in accordance with this opinion.
REVERSED AND REMANDED.