| t MARVIN, Chief Judge.
In this w.e. action the claimant, Donnie Perkins, appeals a judgment maintaining a plea of prescription and dismissing his demands.
We reverse and remand for further proceedings.
FACTS
Perkins had worked intermittently for As-plundh Tree Expert Company from 1973-1987 using power chain saws and other equipment. During that period he suffered cramps and pain in his hands from time to time. These symptoms abated each time he quit his employment and found jobs doing other things for other employers. In the spring of 1988 he began doing janitorial and maintenance work for County Market for three consecutive years. He did not suffer similar symptoms while working for County Market.
In April 1991 Perkins again became an employee of Asplundh, resigning his employment with County Market in May 1991. While using chain saws and other equipment, the pain and cramps reappeared, becoming *1200 so severe on June 14, 1991, that he had to leave work.
Obtaining medical treatment the next day, June 15,1991, he was diagnosed for the first time with carpal tunnel syndrome, although and as found by the hearing officer (WCHO), he had experienced symptoms of CTS “during all of his prior employment with As-plundh ... as far back as 1973.” The WCHO concluded that Perkins’ CTS “manifested itself at least by 1988 and that the condition was disabling at that time [when he quit work for Asplundh in 1987].”
Perkins filed his w.c. claim August 28, 1991.
^DISCUSSION
Perkins complains the WCHO’s preliminary finding that his claim has prescribed is clearly wrong. He argues that the disease had not become disabling within the meaning of the statute until he was unable to perform some work-related task and until the disease was diagnosed by a physician.
CTS is an “occupational disease” under the w.c. law. LRS 23:1031.1 B. A timely demand for benefits arising out of an occupational disease must be made within six months after the “disease” manifested itself, and the claimant must show he is “disabled from working as a result of the disease,” and that he “knows or has reasonable grounds to believe that the disease is occupationally related.” LRS 23:1031.1 E. The statutory requirements of § 1031.IE are conjunctive. Brown v. City of Monroe, 521 So.2d 780 (La.App.2d Cir.1988).
The medical opinions in this record agree that Perkins suffered from the occupational disease, CTS. Most agree that the disease probably existed for some years before 1991. One says there is no way to tell for sure; another says there are so many causes of the disease that the cause of CTS cannot be stated. One would not rule out as a cause of the disease, the maintenance and janitorial work Perkins did for three years before resuming work with Asplundh in April 1991. In any event, § 1031.1E does not require that the disease, unlike an injury occurring on the job, be caused or aggravated by the work, but only that the employee have the “disease,” that the disease be “occupationally related” and that the disability be “a result of the disease.”
| gThe critical issue is not whether Perkins knew or should have known that the symptoms he experienced over the several years he had worked for Asplundh before 1991 were occupationally related. Almost every adult person can attribute pain he or she experiences in a particular member of the body to the manner and duration of the use of that member. No doubt that Perkins made this association between his symptoms and his work for Asplundh. Few outside the medical profession, however, are competent to say that recurring symptoms are symptoms of a particular disease, much less of an occupational disease within the meaning of the w.c. law. Would Perkins, upon suffering pain and cramps in his hands when he quit Asplundh on any occasion between 1973 and 1987, and asserting a timely claim for disability without supporting medical diagnosis, meet his burden of proving, under the w.c. law, his allegation that, “I have a disabling occupational disease, CTS?” We think not.
As in Williams v. Public Grain Elevator of New Orleans, Inc., 417 So.2d 398 (La.App. 4th Cir., 1982), writ not considered, we conclude that a lay worker should not be required to diagnose, as an occupational disease, the cause of the symptoms which disable him, when the issue is prescription of a w.c. claim. Tracking the statutory language, we hold that under the circumstances of this record on the claim of prescription, the occupational disease, not the symptoms of the disease and not the disability resulting from the disease, “manifests” itself when a medical doctor squarely diagnoses the worker as having an occupational disease within the w.c. law.
UMoreover, this record establishes that Perkins was not disabled from working until he left work on June 14, 1991, because of the pain in his hands and wrists. He worked for Asplundh two months before then. In Louisiana, “disability” means inability to perform the same or similar work as before the contraction of the occupational *1201 disease. LaCoste v. J. Bay McDermott & Co., 250 La. 43, 193 So.2d 779 (1967). Prescription does not begin to run on a claim for disability arising after an accident until the disability occurs. Austin v. Howard Discount Stores, Inc., 569 So.2d 659 (La.App.2d Cir.1990). Because Perkins’ claim was filed within three months after his disability arose and the medical diagnosis of an occupational disease was made, we cannot agree with the WCHO that Perkins’ claim is prescribed simply because Perkins knew or should have known at least by 1988 that his [symptoms were] related to his employment.
DECREE
We reverse and hereby render judgment overruling the plea of prescription and assessing costs to appellees. We remand for further proceedings on all issues relating to the merits of the claim.
REVERSED, RENDERED AND REMANDED.