IzWATKINS, Judge.
This is a claim for worker’s compensation benefits brought by Jacquelyn M. Bynum against her former employer, Capital City Press (Capital City). On February 11, 1991, the plaintiff filed a “Disputed Claim for Compensation” with the Office of Worker’s Compensation Administration alleging that on September 13, 1984, she became ill as a result of inhaling fumes in her workplace. Capital City filed an exception of prescription. A hearing was held on the exception of prescription on May 31, 1991. The plaintiff appeared at the hearing without her lawyer, Robert Hill, who had not received written notice of the hearing. The hearing officer allowed the plaintiff to contact Mr. Hill, and he eventually appeared at the hearing but refused to participate because he had not received notice and was unprepared to argue the exception. The hearing officer heard arguments in support of sustaining the exception of prescription from counsel for Capital City. No evidence was taken at the hearing. After giving Mr. Hill fifteen days to file a brief in opposition to the exception, the hearing officer rendered judgment sustaining the exception and dismissing the plaintiffs claim. Plaintiff appealed the dismissal, and this court reversed the judgment based on a denial of due process of law for the failure to notify plaintiffs counsel of the hearing on the exception of prescription. A re-trial on the exception was held on October 25, 1993; again the exception of prescription was upheld and plaintiffs claim dismissed. Plaintiff appeals, alleging that the trial court erred in determining that the prescriptive period began to run in 1988.
FACTS
The plaintiff, Jacquelyn Bynum, was employed by Capital City Press, on January 13, 1977, as an apprentice pressman where she worked in the pressroom and was exposed daily to fumes from inks, dyes, dust, and chemicals. In February, 1984, Ms. Bynum was hospitalized by her treating physician, Dr. Hulon Lott, when she |3began coughing up dark green sputum. During her hospital stay she was seen by Dr. William Hines, and he gave a history of recurrent pneumonia in 1971, 1972, 1973, and most recently in 1983. She also related that her father and a brother had similar problems. The plaintiff underwent a bronchoscopy and bilateral bron-chogram and was diagnosed as having cystic bronchiectasis of the right middle lobe and cylindrical bronchiectasis of both lower lobes. Dr. Hines, a pulmonary specialist, concurred with the diagnosis of bronchiectasis, stating that “[ojver the last 10-12 years, she has had amazingly little difficulty. I don’t think any of the exotic causes of bronchiectasis, that is, IgA deficiency, cartilaginous syndrome, etc. are relevant here.” He also thanked Dr. Lott for allowing him to “see this fascinating case.”
Ms. Bynum was readmitted to the hospital in August 1984, for bronchiectasis. Another bronchoscopy and a left bronchogram were performed. Ms. Bynum’s condition worsened, and she underwent a right middle lo-bectomy on September 13, 1984, performed by Dr. E. McCool.
The plaintiff returned to work at Capital City press in March or May of 1985. She continued to have problems and ultimately left her job in September, 1985. In October, 1985, she was again admitted to Baton Rouge General Hospital for pneumonia and chronic bronchitis. In December, 1985, she sought the advice of pulmonary specialists at the University of Texas Health Science Center at Houston, Texas. Upon presentation, she related a history of recurrent pulmonary symptoms, particularly productive cough, and several hospitalizations for recurrent pneumonia, the onset of which was in childhood. In *491 a letter dated December 16, 1985, Dr. David Dantzker and Dr. Alan Glann stated that “[s]he [plaintiff] was informed that although there does not appear to be any underlying congential [sic] or hereditary reason for her pulmonary problems, further studies to completely rule this possibility out would be necessary, |4specificaIIy with her siblings and possibly other family members.” The doctors also concluded that her current level of disability precluded her from working at her current tasks and a moderate exercise conditioning program was suggested for symptomatic improvement.
The plaintiff remained 100% disabled and continued treatment through her treating physician Dr. Hulon Lott. Plaintiff also saw Dr. Philip Perret on November 16, 1987, where she related a history of recurrent pneumonia dating back to 1970 and a chronic cough since birth. The patient’s history also states that the patient “worked at Capitol [sic] City Press as a ‘press person’ and had to work around ink fumes which aggravated her cough.... ” After an examination, chest x-ray, and spirometry, Dr. Perret concluded that “Mrs. Bynum would be considered disabled although I would not feel that she is completely disabled in the sense that she is unable to perform any occuptaion [sic] for which she is reasonably suited by education, training, or experience. She is partially disabled in that she has persistent and I would expect a permanent disability related to her bronchiectasis.” He further noted that the work would need to be sedentary in a controlled indoor environment and that she would have more than the usual amount of sick days because of potential flareups of infectious bronchiectasis.
Dr. Lott died in July of 1988, and plaintiff thereafter began treatment with Dr. Wilbert McClay, a general practitioner, in August of 1988. During her first examination with Dr. McClay, Ms. Bynum related that she was totally well prior to the onset of the illness that led to the lobectomy in 1984. She stated that her problems began after she took a job working on the newspaper and that she eventually began coughing up ink. After this examination, Dr. McClay wrote to Ms. Laura Dreher, claims examiner for Ms. Bynum’s disability carrier, informing her that Ms. By-num was his patient, that she was 100% disabled at that time, that she needed tests performed, and that he was seeking ^authorization for payment from the eompa-ny. He also requested the test results from Ms. Bynum’s previous doctors. He noted at the bottom of the letter that his “[i]mpression” was “Disability due to Occupational Lung Disease.” After receiving information from her previous physicians, Dr. McClay reported to the disability earlier in December 1988, that Ms. Bynum was 100% disabled at that time; however, he agreed with Dr. Perret that she might be able to carry out a very sedentary job in a controlled environment with re-education and training. The report indicated no findings as to the cause of Ms. Bynum’s condition.
Plaintiff began temporary work with the West Baton Rouge School Board on December 8, 1988, after her disability benefits were discontinued. She worked until March of 1990. She worked 82.5 hours in 1988; 219.5 hours in 1989; 382.5 hours in 1990, from January until March. Her disability benefits were reinstated with back pay from the date of termination.
In an attempt to find the cause of the plaintiffs illness, Dr. McClay examined the plaintiffs two younger brothers said to have lung problems. The examinations showed no hereditary illness. Dr. McClay then informed the plaintiff in October of 1990, that he believed that she had Occupational Lung Disease. Dr. McClay testified that although this was his original impression, he could not be sure until he had seen the results of Ms. Bynum’s previous tests and examined her family members thought to have lung problems. When questioned whether he told the plaintiff about his initial impression, he stated:
A. No, I didn’t discuss that with her.
[[Image here]]
Q.- Did you discuss an impression of what you thought may have been her problem?
A. Yes, I probably may have.
Q. And you told her that you thought it was the inhalation of the fumes—
*492 A. No, I didn’t tell her. I told her that it could be.
^PRESCRIPTION
LSA-R.S. 23:1031.1(E) provides a three part test for determining when prescription begins to run in worker’s compensation claims for occupational diseases. This section provides:
All claims for disability arising from an occupational disease are barred unless the employee files a claim with his employer within six months of the date that:
(a) The disease manifested itself.
(b) The employee is disabled from working as a result of the disease.
(c) The employee knows or has reasonable grounds to believe that the disease is occupationally related.
Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.
The statute also provides in LSA-R.S. 23:1031.1(1) that:
Notice of the time limitation in which claims may be filed for occupational disease or death resulting from occupational disease shall be posted by the employer at some convenient and conspicuous point about the place of business. If the employer fails to post this notice, the time in which a claim may be filed shall be extended for an additional six months.
The jurisprudence has consistently interpreted the three requirements in LSA-R.S. 23:1031.1(E) as conjunctive; the existence of all three is necessary for the prescriptive period provided in the statute to commence. Thornell v. Payne and Keller, Inc., 442 So.2d 536 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1231 (La.1984).
The trial court found that because the employer failed to post notice of the time limitation, the applicable prescriptive period in this case was one year. Thereafter he concluded that all three of the conditions in LSA-R.S. 23:1031.1(E) existed no later than September of 1988, and therefore the plaintiffs claim was prescribed.
The plaintiff argues on appeal that she was not aware that her condition was caused by her previous work environment until 1990 when Dr. McClay told her that he believed that she had 170ccupatk>nal lung disease. Plaintiff admits that she knew that her work environment was contributing to her condition and disability, but she asserts she had no knowledge that her condition and disease were caused by her work environment until informed by Dr. McClay in October of 1990.
It is well established that a trial court’s finding of fact may not be set aside on appeal in the absence of manifest error, and where there is a conflict in testimony, reasonable inferences of fact should not be disturbed on appeal. Stobart v. State Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). When a trial court’s findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Rosell v. ESCO, 549 So.2d 840 (La.1989).
After reviewing the record, we believe that the hearing officer’s finding, that the plaintiff knew or had reasonable grounds to believe her disease was occupationally related no later than September of 1988, is supported by the evidence. Plaintiff was diagnosed with chronic bronchiectasis and told she could work only in a climate controlled environment as early as November of 1987. We further believe that a reasonable person would know that her condition was work related when she began coughing up ink, as the plaintiff testified she did. See Thornell v. Payne and Keller, Inc., 442 So.2d 536 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1231 (La.1984), wherein the court found the plaintiff (a sand blaster) knew his disease was work related after diagnostic procedures revealed chronic and mild silicosis of both lungs and irritable chronic bronchitis, and his doctors recommended that he avoid exposure to sand and discontinue smoking.
We decline to follow the reasoning of Williams v. Public Grain Elevator of New Orleans, Inc., 417 So.2d 398 (La.App. 4th Cir.) writ not considered, 422 So.2d 160 (La.1982), and Perkins v. Asplundh Tree Expert *493 Company, 26,457-CA (La.App. 2d Cir. 1/25/95); 650 So.2d 1198, wherein the courts concluded that the claimants did not have knowledge of the relation of their diseases to their employment until diagnosed as having occupational diseases by experts. We believe that the determination of knowledge should be made upon all the facts presented and not strictly upon a definitive diagnosis by a physician. The language of the statute does not require knowledge that the claimant have a reasonable belief that his disease is an occupational disease, but rather requires only a reasonable belief that the disease is work related.
For the reasons set forth, we affirm the judgment of the healing officer sustaining the exception of prescription. All costs of this appeal are assessed to the plaintiff.
AFFIRMED.