663 So.2d 543 (1995)
David STEVENS, Plaintiff-Appellee
v.
WAL-MART STORES, INC., Defendants-Appellants.
No. 27,977-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1995.
Rehearing Denied November 30, 1995.
*545 Theus, Grisham, Davis & Leigh by George M. Snellings, IV, Monroe, for Appellants.
Smith & Shadoin by R. Wayne Smith, Ruston, for Appellee.
Before NORRIS, WILLIAMS and STEWART, JJ.
NORRIS, Judge.
In this worker compensation case, Wal-Mart and its insurer, Claims Management Inc., appeal the hearing officer's rulings that the employee's claim has not prescribed and that his disability is related to his work at Wal-Mart. The employee, David Lee Stevens, separately appeals the denial of penalties and attorney fees. For the reasons expressed, we affirm.

Factual and procedural background
Stevens was a manual laborer in the receiving area at the former Ruston Wal-Mart store. He worked the night shift and earned $5.00 an hour. Early one Saturday morning in January 1993 he returned home from a shift and spent the next 24 hours or so around the house, sleeping on the couch and watching TV. At 3:30 Sunday morning, he suddenly awoke with a riveting pain in his left shoulder. He had never experienced any problems with his left shoulder before. The pain was so intense that he went to Lincoln General Hospital's emergency room, where he received cortisone and Demerol shots. This treatment, however, did not give him any relief. He attempted to return to work at Wal-Mart the following Monday night, but was in such pain that he could not work and left after a couple of hours. The following Wednesday he was admitted to the hospital and began a long series of tests.
Several tests, including x-rays and an EMG, were all negative. The doctors were at a loss to explain the debilitating pain. Dr. Dharam Gurwara, a neurologist in Ruston, described the condition as "probable idiopathic brachial neuritis," meaning an inflammation of a nerve in the brachial (shoulder) area, with no known cause. Dr. James Finley, an orthopedic surgeon in Ruston, diagnosed "possible brachial neuritis," an assessment which he later described as "basically no diagnosis."
After he was discharged from Lincoln General without improvement, Stevens saw Dr. David Cavanaugh, a neurosurgeon in Shreveport. He described the condition as "left arm pain of unclear etiology," and considered several possibilities, including a lesion, vascular disease, and brachial plexopathy (nerve damage). Dr. J.C. Johnston of Nacogdoches, Texas performed two MRIs, which were negative; he described Stevens's condition as "subacute left brachial plexopathy." After all this testing Stevens was still in great pain and had been unable to work since January 11. Despite their various hypotheses, the doctors could offer him no definite treatment. From the outset Stevens had told his supervisor (and some coworkers) at Wal-Mart that his injury was not work-related. He claimed his diagnostic and medical expenses on regular disability insurance, not on comp.
Dr. Cavanaugh referred Stevens to Dr. Donna Holder, a pain specialist and anesthesiologist in Shreveport, in early May. She referred him to one of the country's leading brachial neurosurgeons, Dr. David Kline at LSU Medical Center in New Orleans. Dr. Kline examined him and suspected that the suprascapular nerve might be damaged, but he could not be certain without operating. He therefore performed exploratory and reparative surgery in August and found that the ligaments around Stevens's suprascapular nerve had compressed or pinched the nerve. He repaired this, but found that an accessory nerve, the 11th cranial nerve, might also be damaged. The surgery yielded slight relief. Stevens is still unable to work; Dr. Holder testified that he would need an EMG and possibly further surgery to repair the other nerve. She also recommends implanting an electrical stimulation system in his spine or brain, and possibly spinal narcotics. Currently Stevens must take an oral narcotic, Methadone (a synthetic form of morphine), which renders him unsuitable for even sedentary work.
Immediately after the surgery Dr. Kline advised Stevens that his condition almost invariably arises from trauma, usually from *546 lifting something too heavy. He also said that the trauma generally occurs 12 to 48 hours before the onset of pain. Stevens then recalled that on his last full day of work he had tried to lift a boxed ping pong table. He got it about one inch off the ground, felt a twinge in his left arm, realized the box was too heavy, and let it back down. Stevens said he thought nothing of this at the time, as minor aches and pains are common in his line of work. In addition, he never associated that incident with his condition because the pain had suddenly attacked him some 36 hours after the lift.
With this new diagnostic information, Stevens returned to Wal-Mart on September 14 and submitted a comp claim with the personnel manager, Ms. Turner. This was, of course, eight months after the lifting incident. Ms. Turner told him that Wal-Mart would be "getting back in touch with him." Weeks passed without response, so Stevens began phoning the company's insurance representative, Ms. Braswell, in Bentonville, Arkansas. She repeatedly told him that his request was complicated because of the lapse of time between the incident and the filing of his claim, but that the company was working on it. In mid-February 1994, 13 months after the accident, the insurer advised Stevens by letter that it was rejecting his comp claim. Stevens filed the instant action with the Office of Workers' Compensation on February 24, 1994.
Wal-Mart and its insurer filed an exception of prescription which the hearing officer heard in separate proceedings in November 1994. The officer overruled the exception. Then, at trial in February 1995, Wal-Mart conceded Stevens's disability and contested only causation and the claim for penalties and attorney fees.
The hearing officer gave extensive oral reasons for judgment. In these she accepted Stevens's testimony as credible and found that his disability did indeed result from a job-related accident. She therefore awarded temporary, total disability benefits from January 8, 1993 until he is released to work by his treating physician, Dr. Holder. She also awarded all medical expenses incurred or to be incurred in connection with the accident.[1] Finally, stating this was an "unusual case" and citing the inconclusive diagnoses received until Dr. Kline operated, the hearing officer found that Wal-Mart's refusal to pay on demand was not arbitrary, capricious or without probable cause. She therefore denied Stevens's claim for penalties and attorney fees.

Applicable law
An employee is entitled to compensation benefits if he receives a personal injury by accident "arising out of and in the course of his employment." La.R.S. 23:1031 A. The employee has the burden of proving, by a preponderance of evidence, that his disability is related to an on-the-job injury. Walton v. Normandy Village Homes Ass'n Inc., 475 So.2d 320 (La.1985); Brown v. Blue Grass Liquor Co., 25,552 (La.App.2d Cir. 2/23/94), 632 So.2d 904. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Id. In order for the employee to recover, he must show that his employment somehow caused or contributed to the disability, but he need not establish the exact cause. Id.; Andrews v. Music Mountain Water Co., 25,634 (La.App.2d Cir. 4/6/94), 637 So.2d 571, writ denied 94-1190 (La. 6/24/94), 640 So.2d 1356. A claimant's own testimony may be sufficient to prove causation by a preponderance of evidence, provided (1) no other evidence discredits or casts serious doubt upon the claimant's version of the incident, and (2) the claimant's testimony is corroborated by circumstances surrounding the alleged incident. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992); Lubom v. L.J. Earnest Inc., 579 So.2d 1174 (La.App.2d Cir. 1991).
Worker compensation claims are subject to a prescriptive period of one year. La.R.S. 23:1209 A. The statute further provides:

*547 [W]hen the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.
"Development of the injury" actually means development of disability, and disability marks the time from which the employee can no longer perform the duties of his employment in a satisfactory manner. Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952); Glascock v. Georgia-Pacific Corp., 25,677 (La.App.2d Cir. 3/30/94), 635 So.2d 474. This point in time often coincides with the date on which the employee ceases his employment with the employer. Swearingen v. Air Products & Chemical, Inc., 481 So.2d 122 (La.1986). However, even though the disability may be apparent, prescription does not usually start to run where the cause of action is not known or reasonably knowable by the plaintiff. Corsey v. State through Dept. of Corrections, 375 So.2d 1319 (La.1979). In the context of worker compensation, this means that prescription will not begin to run until the claimant is aware, or should have been aware, that the injury and its resultant disability are work-related. Bolden v. Georgia Cas. & Sur. Co., 363 So.2d 419 (La.1978); Robicheaux v. Lafayette OB/GYN Clinic, 607 So.2d 990 (La. App. 3d Cir.1992).
The standard of appellate review applicable to hearing officers is the same as applies to district courts, manifest error. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 1/14/94), 630 So.2d 706. Under this standard, the issue to be resolved by the appellate court is not whether the hearing officer was right or wrong, but whether the factual conclusion was reasonable. Stobart v. State, through DOTD, 617 So.2d 880 (La. 1993). Mere conflicts in evidence will not suffice to overturn a hearing officer's reasonable evaluations of credibility and reasonable findings of fact. Rosell v. ESCO, 549 So.2d 840 (La.1989). Only when documents or objective evidence so contradict the witness's story, or that story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it, may the court of appeal find manifest error. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990).
The employer or its insurer must pay benefits within 14 days of notice of the injury and loss; failure to pay timely subjects the liable party to a penalty of 12 percent, "unless such nonpayment results from conditions over which the employer or insurer had no control" or "the employee's right to such benefits has been reasonably controverted by the employer or his insurer." La.R.S. 23:1201 E; Barton v. Wausau Ins. Co., 545 So.2d 1248 (La.App. 2d Cir.1989). The statute further provides for attorney fees in the event that failure to pay benefits within 60 days of receipt of written notice is found to be "arbitrary, capricious, or without probable cause." La.R.S. 23:1201.2. These provisions are penal in nature and must be strictly construed, allowing recovery only when the facts of the case negate probable cause for nonpayment. Robichaux v. Terrebonne Parish Sch. Bd., 426 So.2d 241 (La. App. 1st Cir.1983). The hearing officer has great discretion in deciding whether to allow or disallow penalties and attorney fees. Barton v. Wausau Ins. Co., supra.
The court of appeal will review only those issues which were submitted to the hearing officer and contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise. URCA-Rule 1-3; Haltom v. State Farm Mut. Auto. Ins. Co., 588 So.2d 792 (La.App. 2d Cir.1991); Owens v. Jackson, 550 So.2d 359 (La.App. 3d Cir.1989), and citations therein.

Discussion: Prescription
By their first assignment Wal-Mart and its insurer urge the hearing officer erred in overruling their exception of prescription. The thrust of the argument is that Stevens sustained a "development of injury" under § 1209 A, giving him a filing time of one year from the date he could no longer perform his duties because of the injury. Mottet v. Libbey-Owens-Ford *548 Glass Co., supra; Brown v. Reese, 532 So.2d 187 (La.App. 2d Cir.1988). They argue that on January 11, 1993, Stevens came to work and was unable to finish his shift because of pain, so his claim filed on February 24, 1994 was untimely. They further argue that the jurisprudence regarding causation under § 1031 A requires the claimant to prove only that the accident somehow caused or contributed to his disability. Brown v. Blue Grass Liquor, supra. This being the case, they contend that the early diagnosis of probable idiopathic brachial neuritis, though imprecise, was sufficient to place him on notice as early as January 17, 1993 that his work somehow caused or contributed to his disability, and his claim was untimely. In further support they cite the recent case of Bynum v. Capital City Press, 94-1658 (La.App. 1st Cir. 5/5/95), 655 So.2d 489.
We have closely examined the evidence to review whether the hearing officer should have treated this case as one of development of injury. In Brown v. Reese, supra, we explained the application of this concept:
Proper situations for the application of the "development of injury" rule, allowing prescription to take effect at the expiration of "one year from the time the injury develops" include those where an employee becomes disabled as a result of successive traumatic incidents on the job without being able to attribute his disability to a single event; or where a relatively minor trauma did not cause immediate pain but pain slowly developed to the point of disability; or, where an employee is injured and sustains pain but continues to work believing he can perform his duties, only to subsequently find the injury has developed to a state of disability. 532 So.2d at 190.
In Brown, the claimant sustained a broken knee while working as a nightclub manager on April 11, 1985; he continued to work until April 17, 1985; he did not file his suit until May 14, 1986. It was apparent by April 17 that the disabling injury was the broken knee and was work-related. This court was willing to hold that the disabling nature of the injury did not develop until April 17, when Brown could no longer work. We declined to extend it to May 14, and affirmed the trial court's judgment sustaining the exception of prescription. In Mottet, supra, the claimant, a glass cutter, experienced back pain immediately after lifting a 100-lb. pane of glass on January 27, 1946; however, he was able to continue working until March 11, 1947, and filed suit on August 4, 1947. The Supreme Court held that even though there was severe pain immediately after the incident, the pain was not disabling until March 1947; prescription did not begin to run until the latter date.
On close analysis we are constrained to say that neither Brown, Mottet, nor the other development of injury cases cited by appellants is apposite to the instant case. Here there is no evidence that Stevens's injury was caused by successive or incremental trauma. His pain did not begin as minor, slowly increasing through time. Finally, after the onset of pain, Stevens did not really continue to work; he made one brief abortive attempt to work the Monday after the incident, but this was totally unsuccessful. On the contrary, Stevens sustained immediate, severe pain which required no lapse of time to develop into disability. In short, the hearing officer was not plainly wrong to disregard appellants' contentions that under the development of injury rule, Stevens's action prescribed on January 17, 1994, one year after he quit work.
The proper analysis, in our view, is discussed in the cases holding that the year only begins to run from "the point at which it is manifest that the employee has a compensable claim, which may often be only when the injury is diagnosed as work-related and disabling." Malone & Johnson, 14 La.Civil Law Treatise (Workers' Compensation), § 384, p. 355 (1994 ed). In Bolden v. Georgia Cas. & Sur. Co., supra, the claimant, a truck driver, fell from a truck on May 23, 1974, after which he was diagnosed with a back strain and released to work on August 17, 1974. Although he was working in some pain, physicians continued to tell him he suffered from cervical myositis, a muscular inflammation which is not traumatically induced. In September 1975, however, a neurosurgeon discovered that Bolden actually had nerve root *549 irritation and ascribed it to a trauma, such as Bolden's May 1974 fall from the truck. Reversing two lower courts, the Supreme Court held that Bolden's suit, filed on March 24, 1976, was timely. In Robicheaux v. Lafayette OB/GYN Clinic, supra, the claimant was a nurse who, in the course of her work, dropped an instrument into a pan and splashed a solution into her eye on June 6, 1985. About two weeks later she noticed that her vision was blurred and the eye irritated. On June 17, 1985, and later in December 1985, two ophthalmologists diagnosed viral keratitis and declared the condition was not work-related. However, her complaints continued, and in January 1990 a third ophthalmologist performed surgery and discovered that the problem may indeed have been work-related. He testified that, more likely than not, the herpes virus was present on the vaginal speculum that Ms. Robichaux dropped into the pan and was transferred to her eye by the splash. Affirming the hearing officer, the court of appeal rejected the defense argument that the claimant's eye problem was manifest and disabling on June 17, 1985, when the first doctor diagnosed herpes zoster keratitis. It held that until the claimant is aware, or should have been aware, that the injury with its resulting disability is work-related, prescription does not begin to run.
The rationale of Bolden and Robicheaux applies to the instant case. According to Dr. Kline, Stevens sustained an injury with delayed symptoms. The hearing officer was entitled to find that it would be unreasonable to charge Stevens with knowledge that his disabling pain was work-related when it began some 36 hours after the incident. This fact alone distinguishes the case of Bynum v. Capital City Press, supra. There the claimant was a press worker at a newspaper; the job exposed her to fumes from inks, dyes, dust and chemicals. In February 1984 she was hospitalized, coughing up dark green sputum. Her consulting pulmonary specialist diagnosed cystic and cylindrical bronchiectasis, and she had one of her lobes removed in September 1984. The pulmonary expert could not ascribe a cause for her condition, but noted her personal and family history of bronchitis. Ms. Bynum's condition did not improve, and she left Capital City Press in September 1985. In late 1987, she began reporting to doctors that ink fumes at the newspaper had aggravated her cough, and in August 1988 told a new doctor that her job had caused her to cough up ink. That doctor reported in October 1990 that Ms. Bynum had occupational lung disease. She filed her claim on February 11, 1991. The court of appeal affirmed the hearing officer's judgment that the claim was prescribed, noting, "a reasonable person would know that her condition was work related when she began coughing up ink, as the plaintiff testified she did." Id., at 492. In the instant case, there is no evidence that a reasonable person would have associated excruciating pain in the left shoulder with an attempted lift that caused only a twinge in the arm when it occurred some 36 hours earlier.
Further, Stevens received inconclusive diagnoses until Dr. Kline performed exploratory surgery. Although appellants urge that the early findings such as Dr. Finley's report of "possible brachial neuritis" should have placed Stevens on notice of a work-related injury, Dr. Finley actually explained that this is "basically no diagnosis." Finley Dep., 11. Dr. Kline rejected the diagnosis of brachial neuritis because it is not trauma-related. Kline Dep., 56. Dr. Holder explained that all the early impressions, including her own, were general and could not really pinpoint the problem. Holder Dep., 13. It would be unfair to charge Stevens with medical knowledge that several experts using advanced technology could not discern until Dr. Kline's surgery.
In short, the evidence supports the hearing officer's finding that this injury had a unique, delayed effect and that inconclusive medical opinions failed to link the disability to work-related trauma until surgery in August 1993. We are unable to declare these findings plainly wrong. Stobart v. State, supra. These findings are sufficient to suspend the running of prescription under R.S. 23:1209 A until August 1993. The hearing officer did *550 not err in overruling the exception of prescription.[2]

Causation
By their second assignment, Wal-Mart and its insurer urge the hearing officer erred in ruling that Stevens proved by a preponderance of the evidence that he sustained an accident in the course of and arising out of his employment. They contend that the only evidence that an accident occurred is the self-serving, uncorroborated testimony of Stevens himself, who denied any work-related incident to seven different doctors and did not remember one until eight months after it allegedly happened. They also contest, as an improper allocation of the burden of proof, the hearing officer's comment that they failed to prove a ping pong table was not present. They concede, however, that the hearing officer's finding is regulated by the manifest error rule. Rosell v. ESCO, supra.
It is true that Stevens offered no testimony of coworkers that he lifted or tried to lift a ping pong table, or that lifting ping pong tables was part of his job. However, both Stevens and one coworker, Katherine Hargrove, testified that their work involved loading merchandise from trucks, moving it into the receiving area and pricing it. Since receiving personnel had to unload anything that came on truck, the hearing officer was entitled to accept Stevens's testimony that he had to move a ping pong table. Stevens also testified that if he had to move something very heavy, he would ask for help; if he thought he could lift the ping pong table by himself, then he probably would not have asked for help, and nobody would have been around to witness the incident. This would reasonably explain why Ms. Hargrove did not see it, despite her testimony that she "probably" would have seen someone injure his shoulder on the job.
Stevens did provide corroboration that once he got home on Saturday morning, he did not engage in any heavy labor or lifting, but mostly slept, ate and watched video tapes. His wife, Ning Stevens, verified this. His account of how the accident happened and his denial of any other accident that could have caused the disability were not so internally inconsistent or conflicting with documentary or other evidence that the hearing officer was required to discredit them. Sistler v. Liberty Mutual, supra. Moreover, Stevens's failure to promptly report a work-related accident is not fatal to his claim. Bruno v. Harbert Int'l Inc., 593 So.2d at 362; Nelson v. Roadway Express Inc., 588 So.2d 350 (La.1991). Although the instant delay was significantly longer than in Bruno or Nelson, in light of the unusual delayed effect of Stevens's symptoms and the inconclusive medical opinions noted above, the hearing officer was certainly entitled to find that Stevens's testimony was believable and he was not unreasonable in reporting the accident as late as he did. We perceive no manifest error.
Finally, we note that the medical evidence from Dr. Kline lends further support to Stevens's account that an accident occurred. Although Dr. Kline mentioned that Stevens may have had a pre-existing "snug" nerve, and that he might have lain down in an unusual position on Saturday morning, he was quite clear that the cause of a compressed suprascapular nerve is trauma, heavy workout or lifting. On this record the hearing officer was not plainly wrong to accept Stevens's account of the accident and find that it caused his disability.

Penalties and fees
By his answer to appeal, Stevens urges the hearing officer erred in failing to find Wal-Mart arbitrary and capricious in its *551 refusal to pay comp benefits. Apparently conceding that the medical evidence was inconclusive for several months after the accident, Stevens contends that by the time of Dr. Kline's (August 12, 1994) and Dr. Holder's (September 22, 1994) depositions, Wal-Mart was fully aware that his condition was work-related. He prays for statutory penalties and reasonable attorney fees.
The facts are that Stevens initially claimed this injury on his disability insurance, not on worker compensation, and denied to a supervisor, coworkers and several doctors that the accident occurred at work; for six months no physician believed, or even suspected that Stevens's condition was traumatically induced, let alone work-related. When Stevens filed this claim in February 1994, it was apparently prescribed. In August and September 1994, a year and a half after the accident, the Kline and Holder depositions showed, more probably than not, that the injury was work-related, but this was after a hearing on the exception had already received its initial setting. R.p. 99.
Being penal in nature, the penalty and attorney fee provisions are strictly construed, and such awards are warranted only when the facts negate probable cause for nonpayment. Robichaux v. Terrebonne Parish Sch. Bd., supra. The hearing officer's decision to award or refuse penalties and attorney fees is a matter of great discretion. Barton v. Wausau Ins. Co., supra. We do not necessarily approve Wal-Mart and its insurer's conduct in handling Stevens's claim for five months and rejecting it only after the one-year period had elapsed. However, the hearing officer could conclude that not only were there factual disputes, but the defendants honestly believed the claim was prescribed. See Harrison v. Chicago Mill & Lumber Co., 446 So.2d 843 (La.App. 2d Cir.1984); Brown v. City of Monroe, 521 So.2d 780 (La.App. 2d Cir.1988). We perceive no manifest error in the hearing officer's conclusion that the defendants were not in bad faith.

Conclusion
For the reasons expressed, the judgment is affirmed. Costs are assessed to defendants, Wal-Mart Stores Inc. and Claims Management Inc.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, NORRIS, WILLIAMS and STEWART, JJ. and CLARK, J., Pro Tem.
Rehearing denied.
NOTES
[1] This award was subject to a credit of 59.29% for the payments made by the employee group health insurer. La.R.S. 23:1212.
[2] At oral argument, counsel for Wal-Mart asserted for the first time that medical benefits may prescribe before weekly benefits. The argument is that R.S. 23:1209 C, which specifically addresses medicals, does not include a provision for interrupting or suspending prescription until the development of injury. Holcomb v. Bossier City Police Dept., 27,095 (La.App. 2d Cir. 8/25/95), 660 So.2d 199 (but see the dissenting opinions of Brown and Williams, JJ). However, Wal-Mart did not advance this claim to the hearing officer at either prior hearing, and in this court has neither assigned the issue as error or briefed it. Under the circumstances we do not consider the issue properly before the court and decline to consider it. URCA Rule 1-3; Haltom v. State Farm, supra.