hDREW, Judge.
Scott Conley appeals a judgment sustaining a peremptory exception of prescription dismissing his workers’ compensation claim. Concluding that prescription did not commence to run until it was manifest that Conley had a compensable claim, we reverse the trial court and remand for further proceedings.

FACTS

Conley began working for Georgia-Pacific in May of 1986. Originally employed in the shipping department, he was transferred to the maintenance department, where he performed utility clean-up work. Conley alleges that he experienced persistent harassment by his supervisor, Bill Bayles. Reporting that Bayles told him to “bid off’ the job, Conley believed that Bayles wanted him to leave the maintenance department and work elsewhere in the Georgia-Pacific facility.
On June 3, 1996, Bayles allegedly grabbed Conley by the arm. Conley described this incident in his deposition:
Q: Okay. So can you tell me specifically what someone at Georgia Pacific did to cause you to be admitted to the hospital on June 3rd, 1996?
A: Bill Bayles — I had — he grabbed me.
Q: Where did he grab you?
A: On my aim.
Q: Which arm?
A: My left aim.
Q: And why did he grab you?
A: I don’t know.
Q: What did he say? Did he say anything to you when he grabbed you?
A: He — he told me — I told him that I wasn’t feeling good because I had— I had already called my wife.
DQ: How were you not feeling good? What was wrong?
A: I started — nervousness and I was shaking and blanking and just getting mad, real angry. I was — and I was saying I don’t think I’m going to be able to put up with it no more. And I had told him. He told me — I told him I was going home. He said, “I’m tired of this shit,” you know. “Go in the office,” you know. “And I’m going to get a union steward” or something he said. And he grabbed me like this here and jerked me like that.
Conley believed that Bayles was trying to provoke him to hit Bayles so Conley would be fired.
Conley was admitted to Lakeview Regional Hospital on the afternoon of June 3, 1996. His attending physician, Dr. Aruna Gullapalli, gave an admission diagnosis of “[mjajor depression, recurrent, with psychotic features.” The patient admission form states that the admitting diagnosis was “major depressive disorder, recurrent severe with psychotic features.” During his admission psychiatric evaluation, Conley reported to Dr. Gullapalli that he had increased depression and anxiety over the previous few months concerning his job, and that he could no longer handle the building pressure at work. Conley’s job was the only stressor identified at that time.
Conley was discharged from in-patient hospital treatment on June 12, 1996 and admitted to a “partial hospital program” at Lakeview during which he would receive treatment during the day, but would return to his home at night. The Discharge Treatment Plan lists a diagnosis of “major depression, recurrent -with psychotic features.” Conley was eventually transferred to an outpatient treatment program on June 24, 1996. The admission form for this transfer lists “major depressive disorder, single episode with psychotic features” as the admitting diagnosis.
Conley reported to the staff at Lakeview that he thought about going back to Georgia Pacific and killing Bayles and others he felt had treated him poorly. | ¡¡Conley claimed he heard voices, which sometimes *338 told him to carry out his homicidal plans. Conley also mentioned that he experienced visions, including a vision of Bayles and others chasing him on horseback while carrying pitchforks.
Conley was discharged from Dr. Gulla-palli’s care on October 21, 1996. Dr. Gul-lapalli reported in his discharge summary:
I really felt that overall, the patient had not gained much insight into his problems, nor had he made any real progress. His ongoing homicidal ideations were of great concern to me and the treatment team. I discussed other outpatient treatment places with him, but was unable to come up with any other options available in this area.
I discussed the patient’s case with Dr. Ragsdill, who did a psychiatric evaluation on the patient. Since the patient was making no progress at this time, I felt that he should be referred to another treatment facility.
While Dr. Gullapalli did not believe that Conley was in “imminent danger” of harming himself or others, he felt Conley needed “further, intensive one-to-one counseling.” Therefore, Dr. Gullapalli referred Conley to Dr. Debora Murphy. Dr. Gulla-palli’s diagnosis at discharge was “major depression, recurrent, without psychotic features.” Our emphasis.
Dr. Debora Murphy is a psychiatrist in Monroe. She began treating Conley on October 18, 1996. According to her notes from Conley’s November 5, 1996 visit, her initial diagnostic impression was “major depression, single episode, with psychotic features by history.” Dr. Murphy recognized that additional evaluation would be required before she could “completely rule in or rule out psychotic thinking.” Dr. Murphy related what Conley told her during this November visit:
And, so, I asked him specifically what was the event that led to the hospitalization. He said he was going home because he wasn’t feeling good, and the supervisor in Maintenance grabbed him and told him he couldn’t leave. And he replied that he had had a very difficult week, he had been working on railroad tracks for a week, and he didn’t want to stay. He found himself shaking and, quote, blanking out. Apparently, he wasn’t thinking clearly, close quote.
He went home to get a gun. He said he was tired of being sick and tired, felt like nobody cared, and he thought he probably would use the gun. When I asked him who he was going to use it on, |4he was talking about using it not only on himself, but also on people at the job.
On January 27, 1997, Dr. Murphy identified Conley as having paranoid delusions and thought he was truly psychotic. Her diagnosis of Conley’s condition was schizo-phreniform disorder paranoid type.

PROCEDURAL HISTORY

Conley filed a Disputed Claim for Compensation-1008 form on June 26, 1997. Conley alleged that he suffered mental injury as a result of job stress and harassment by his supervisor at Georgia-Pacific. Georgia-Pacific filed the peremptory exception of prescription on July 27,1998. A hearing on the exception of prescription was held on November 2, 1998. By judgment rendered in open court, the WCJ granted the exception of prescription and dismissed Conley’s claim.

DISCUSSION

Conley’s claim is subject to a prescriptive period of one year. La. R.S. 23:1209. Conley argues that prescription did not commence on his claim until he received the diagnosis from Dr. Murphy. We. agree.
As discussed in Stevens v. Wal-Mart Stores, Inc., 27,977 (La.App.2d Cir.11/1/95), 663 So.2d 543, 548:
[T]he year only begins to run from “the point at which it is manifest that the employee has a compensable claim, which may often be only when the injury is diagnosed as work-related and disabl *339 ing.” Malone & Johnson, 14 La. Civil Law Treatise (Workers’ Compensation), § 384, p. 355 (1994 ed).
Our emphasis.
In Bynum v. Capital City Press, Inc., 95-1395 (La.7/2/96), 676 So.2d 582, the supreme court was faced with the issue of whether La. R.S. 23:1031.1 E [occupational disease] requires an actual medical diagnosis in order for an employee to know or have reasonable grounds to believe his disease is occupationally related, triggering the running of prescription on those claims. In | ^determining that a medical diagnosis was not required for prescription to commence, the court stated:
When an employee is given a diagnosis by a doctor that he has a disease and is told the disease is occupationally related, that employee “knows” his “disease is occupationally related” for purposes of subpart (c) of this statute. To require in every case an actual diagnosis that an employee has a disease which is occupationally related in order to trigger the commencement of prescription would render the remaining language of subpart (c), which states alternatively that the six months period begins to run from the date the employee “has reasonable grounds to believe that the disease is occupationally related,” meaningless. Certainly the legislature, had it intended for prescription to commence under La. R.S. 23:1031.l.E.(c) only upon an actual professional diagnosis of an occupationally related disease, could easily have said so. Indeed, the legislature has indicated its ability to condition receipt of benefits on an actual diagnosis of a certain condition as reflected in La. R.S. 23:1021(7) (d) dealing with com-pensability of a mental injury or illness
[[Image here]]
Bynum v. Capital City Press, 676 So.2d at 587.
Our emphasis.
Mental injury caused by mental stress is not compensable under the workers’ compensation laws unless the mental injury is the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence. La. R.S. 23:1021(7)(b). As referenced in Bynum, La. R.S. 23:1021(7)(d) provides:
No mental injury or illness shall be compensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
Dr. Gullapalli diagnosed Conley as suffering from major depression, recurrent, with psychotic features when she began treating Conley. However, when she discharged Conley from her care and referred him to Dr. Murphy, the diagnosis of major depression remained, but without psychotic features. The existence or nonexistence of psychotic features is significant. As Dr. Murphy explained during her deposition, “[s]chizophreniform diagnosis is a psychotic | ¿reaction that’s lasted more than six months, but less than twelve months.” Our emphasis. If the psychotic condition lasts for longer than a year, it is then called schizophrenia.
Dr. Murphy’s diagnosis is consistent with the diagnosis of paranoid schizophrenia by Dr. Rennie Culver. Conley had been referred to Dr. Culver by counsel for Georgia Pacific for the purposes of an independent psychiatric examination. Dr. Culver examined Conley on March 2, 1998.
Conley clearly knew that he had suffered some mental injury caused by his experiences at work when he was admitted to Lakeview Hospital in June of 1996. Although he was diagnosed as suffering from depression by Dr. Gullapalli, a true diagnosis of his mental condition was not made until January 27, 1997. We find it significant that Dr. Murphy’s diagnosis is essentially the same diagnosis given by Dr. Cul- *340 ver on behalf of Georgia-Pacific. Conley did not know he had a compensable claim until this time. As such, his claim has not prescribed.

DECREE

At appellee’s cost, the judgment is REVERSED and the case REMANDED to the hearing officer for further proceedings.
CARAWAY, J., dissents with reasons.
PEATROSS, J., dissents for the reasons assigned by J. CARAWAY.