501 So.2d 1045 (1987)
Louis Wayne WORKS, Appellant,
v.
TRINITY UNIVERSAL INSURANCE CO., Appellee.
No. 18376-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
Writ Denied March 20, 1987.
Walker & Walker by Carl F. Walker, Monroe, for appellant.
Davenport, Files & Kelly by Ramsey L. Ogg, Monroe, for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
This is a suit for rehabilitation services under the workers compensation statute. The plaintiff, Louis Wayne Works, sustained a serious on-the-job injury which left him 25% disabled. The insurance company decided that Works was entitled to rehabilitation services under LSA-R.S. 23:1226. The insurer's rehabilitation agent placed Works in a job with his old employer at his old rate of pay but with significant modifications in his duties to accommodate Works' disability. Works sued for adequate rehabilitation services, claiming he was entitled to retraining in a different skill for a job that would be permanent in nature and would not require him to exceed his limitations regularly. The trial court, in oral reasons, found that Works was not entitled to rehabilitation; he denied relief. *1046 Works now appeals. For the reasons expressed, we reverse and remand.
Works had been employed at Smith's Awning and Blind Company in Monroe for about twelve years. His work consisted of fabricating and installing awnings, patio covers, and other similar home improvements. The work was laborious, involving constant lifting, pulling and stooping. Works was an important employee in the small company which hired only four people. He had considerable know-how and skill. On September 13, 1983, he fell off a ladder on the job and severely injured his back. He underwent surgery to remove a massive extruded disk at L4 on September 23. The surgery yielded some results but progress was slow and the pain never totally abated. In November he was suffering from numbness in his leg, and in December he complained of abnormal pulling sensations that radiated from the groin down to the left foot. By February he was still suffering pain but his physician, Dr. Greer, felt that his improvement had reached a plateau beyond which nothing more could be expected. He therefore released Works and assigned him a 25% permanent partial disability. He instructed Works not to perform any heavy lifting, straining, stooping, bending or prolonged sitting. Feeling that Works' current employment at Smith's Awning and Blind would be too strenuous, he recommended vocational rehabilitation.
All throughout this time the insurer, Trinity, had paid weekly benefits and medicals. When Trinity learned about Works' discharge, the disability rating and Dr. Greer's recommendation of rehabilitation, it called on International Rehabilitation Associates to rehabilitate Works. International's agent and rehabilitation specialist, Mr. Clower, talked to Works and got from him a job analysis or detailed description of the types of tasks and duties Works performed. Mr. Clower then visited Dr. Greer and talked about the physical restrictions. Dr. Greer apparently agreed that Works could resume working for Smith's Awning if the extreme physical elements were eliminated. Mr. Clower drew up a modified job plan that would place Works in a supervisory position of overseeing and training new employees. The job description provided that if another employee were absent, Works would fill his place. Otherwise the physical labor was expected to be the other workers' responsibility. Dr. Greer said that if this plan were followed, he would approve it.
Mr. Clower then brought the modified job proposal to Mr. M.E. Smith, the former owner of Smith's Awning. M.E. Smith had sold out to his brother, Reuben E. Smith, in 1981, but Mr. Clower nevertheless conducted all his conversations with M.E. Smith and assumed that M.E. Smith still ran the business. According to Mr. Clower, M.E. Smith agreed to rehire Works as a supervisor. He needed Works' skill on the job and recognized that the restrictions were permanent. Mr. Clower testified that he was concerned "to some extent" about the permanence of the supervisory position, which is unusual in the industry, but that M.E. Smith had fairly assured him that the job would last. Reuben Smith, the actual owner, testified that Works' new position was permanent as far as he was concerned, even though he had never before used a supervisor. He also testified that he could foresee using a supervisor for about two years until a new man could be sufficiently trained to handle the work.
The new position was offered to Works. In early May 1984, Trinity discontinued the weekly benefits. By August, Works accepted and returned to his modified old job. His wages were the same as before. Reuben Smith hired an extra man to perform the physical labor and to be trained by Works. Mr. Clower closed the case, convinced that Works was rehabilitated.
Unfortunately, the actual work environment did not conform to Dr. Greer's restrictions. Works has had to perform some acts that were prohibited, such as climbing ladders. He has felt insecure on the job and has therefore attempted to help out by undertaking tasks that are not allowed. Even when he has stayed reasonably within the restrictions, he has suffered from *1047 severe back pain almost daily and sometimes even on weekends when he did not work. He is afraid of losing his job because either the restrictions or the pain will prevent him from doing everything necessary on a project. He claims the restrictions make him nonproductive and high productivity is crucial in small businesses like Smith's Awning. Reuben Smith recently sold the company and the new owner, Mr. Fulton, confirmed that if the volume of business subsided, Works would be the first person laid off. Mr. Fulton had found Works most valuable when he first took over but since Works has taught him the business and another man has been hired for the physical labor, Works is not as important. He said that small companies could not sustain nonproductive employees. Mr. Fulton thought that given Works' severe medical restrictions, no other similarly situated employer would "touch him." Works has no other training or vocational skills.
In his petition for rehabilitation services, Works claims that placing him in his modified old job is not rehabilitation. He characterizes the supervisory post as temporary; he urges it would not translate into other employment if and when it ends.
The statutory authority for rehabilitation services is LSA-R.S. 23:1226, which provides in part:
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or insurer shall provide such injured employee with appropriate training and education for suitable gainful employment and may utilize programs provided by state and federal agencies for vocational education when conveniently available or may utilize any public or private agency cooperating with such state and federal agencies in the vocational rehabilitation of such injured employee. In the absence of such programs the employer or insurer shall provide vocational rehabilitation with available private agencies.
The trial court interpreted the first sentence of this statute as a kind of condition precedent to rehabilitation. We agree that the first sentence establishes the entitlement to rehabilitation. The trial court erred, however, in holding that the "wages equal" requirement barred Works from rehabilitation services when the insurer had conceded beforehand that Works was entitled to them. Given the voluntary submission to rehabilitation services, the issue became whether Works was indeed rehabilitated; under the facts and applicable law, he was not.
Both at trial and at oral argument in this court, there was confusion between the entitlement to rehabilitation and the requirements of rehabilitation. We have found it necessary to draw a distinction between these concepts to resolve this case and future cases when the issue may arise. The first issue is whether the plaintiff is entitled to rehabilitation services. Once this issue is resolved in the plaintiff's favor, then the issue becomes what constitutes rehabilitation.
That is the crucial question in this case. The trial court was apparently inclined to think that if the services restored the employee to his old wages, then he was rehabilitated; indeed, the rehabilitation expert advanced the same theory. According to Mr. Clower, the paramount goal of rehabilitation is to put the injured person back in his old job with his old employer at the old wages. If this is not possible, then the goal is to place him in a modified version of the old job with the old employer; then a different job with the old employer, then a different job with a different employer. Each case percolates down through the categories until the injured employee is placed. Only if all these options fail is retraining considered.
This approach, though simple and pragmatic, is not correct. The objective of rehabilitation is to educate and increase the job marketability of employees who cannot return to their former positions. See Koslow *1048 v. E.R. Desormeaux Inc., 428 So.2d 1275 (La.App. 3d Cir.1983). Everyone agreed that Works cannot return to his old job because of the strict limitations and the severe pain he suffers. Mr. Clower's proposal of modifying the old job is convenient but it does nothing to educate Works or to enhance his job marketability. On the contrary, it puts Works in a posture that we consider vulnerable. Whenever the blind and awning business suffers a downturn, or whenever the trainee learns Works' skill, then Works is out of a job and stuck on the market with no other skills. This is not the intent of the law.
As for the question of placing an injured employee in a job without providing him with rehabilitative training, we have looked to the jurisprudence of Florida, whose rehabilitation statute was the model for R.S. 23:1226. See Malone & Johnson, Workers' Compensation § 291 (1986 pocket part); West's F.S.A. § 440.49. In Viking Sprinkler Co. v. Thomas, 413 So.2d 816 (Fla. App. 1st Dist.1982), the employer and insurer attempted to discharge their duty by employing a private rehabilitation counseling firm to place the claimant in suitable employment as soon as possible. In other words, they offered "specialized job placement" as the equivalent of "rehabilitation." In a well reasoned opinion, the court declined to accept this argument. It cited "vocational education" and "vocational rehabilitation" as the keynotes of the statute, and the same obviously applies to R.S. 23:1226. The statute mandates vocational training, not mere job placement. The Florida court summarized,
[W]e cannot accept the notion that a "specialized job placement" service is synonymous with rehabilitation. Finding a job for an injured worker, however helpful and beneficial, cannot be equated with "training and education." 413 So.2d at 817.
The instant case is not the first example of an employer or insurer attempting to put an injured employee back with his old employer at the same pay. In the recent case of Thomas v. Elder Pallet & Lumber Sales, 493 So.2d 1267 (La.App. 3d Cir.1986), writ denied 497 So.2d 312 (La.1986), our brethren of the third circuit weighed the economic and social considerations of such an action. There the employee had a 15% disability in his hand and could not resume his work as a sawyer at the mill. The court summarized:
Elder [the employer] places much emphasis on the fact that it offered Thomas another job at the plant earning the same pay. In view of Thomas' disability and Elder's right to terminate employment at any time, we do not find this contention persuasive. Unless Elder guarantees Thomas a job on a permanent basis, Thomas will remain "handicapped" in the labor market because of his disability. Rehabilitation under [LSA-R.S. 23:1226] will ensure Thomas' ability in the future to remain competitive in the labor market by rendering him competent in a new skill. 493 So.2d at 1272.
This sound reasoning applies with even more force to Works' case. Every witness confirmed that supervisory jobs are unheard of in the industry. Works could not go elsewhere and seek a job from employers who would undoubtedly view supervisors as superfluous deadweight. Most significantly, Mr. Fulton's testimony can be logically interpreted to mean that Works' tenure was near its end.
If we synthesize the reasoning of the Viking Sprinkler Co. and Elder Pallet & Lumber Sales cases, supra, we conclude that specialized job placement is of an inherently temporary nature and does not satisfy the statute. Rehabilitation services must include vocational education and appropriate training to make the worker competitive in the labor market.
Works' need of rehabilitation is underscored by the prescriptive period imposed upon requests for the services. Under LSA-R.S. 23:1226 E, the employee has two years from the date that disability payments were terminated to ask for rehabilitation. During this period, an employee like Works might be supervising a trainee and lulled into the false security that his *1049 position is permanent. At the end of two years, if he is fired or replaced, he is ineligible for rehabilitation. This result would thwart the salutary intent of the statute to bring employees back to gainful employment rather than keep them on disability.
We distinguish the recent case of Sino v. Chalmette Gen'l Hosp., 489 So.2d 311 (La. App. 4th Cir.1986). There the trial court refused rehabilitation services and the court of appeal affirmed, holding that because the injured employee could do her old job she was not entitled to those services. The facts in Sino overwhelmingly showed that the injured employee was fully recovered and therefore able to resume her old duties at the same wages and was not entitled to the benefits of R.S. 23:1226. In the instant case, Works' entitlement to rehabilitation is not disputed. He needs vocational training for secure, suitable employment.
The trial court was incorrect in its interpretation of the statute. Under the facts presented, Works is entitled to rehabilitation services. The judgment is therefore reversed and the case remanded for an appropriate order. Costs are assessed to Trinity Universal Insurance Company.
REVERSED AND REMANDED.