660 So.2d 127 (1995)
Louis ADAMS, Jr., Plaintiff-Appellee,
v.
CITY OF SHREVEPORT, Defendant-Appellant.
No. 27284-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
Jerald N. Jones, City Attorney, Lawrence K. McCollum, Assistant City Attorney, Shreveport, for appellant.
John B. Morneau, Shreveport, for appellee.
Before HIGHTOWER, BROWN and STEWART, JJ.
*128 BROWN, Judge.
This is a workers' compensation case. Defendant, the City of Shreveport, appeals from the hearing officer's judgment awarding plaintiff, Louis Adams, Jr., supplemental earnings benefits (SEB) and vocational rehabilitation benefits. We reverse and remand.

FACTS
Plaintiff, Louis Adams, Jr., was employed by the City of Shreveport, Streets and Drainage Department, as a heavy equipment operator. On March 27, 1991, Adams, who was sixty years old, was injured while helping a co-worker carry an iron storm drain cover. Adams sustained cervical, thoracic and lumbar strain and was unable to return to work. Adams received temporary total disability benefits from March 28, 1991, until May 15, 1992. At that time, the City began paying SEB to Adams based upon medical reports and information received from two vocational rehabilitation consultants. Objecting to the reduction in his benefits, Adams filed a workers' compensation claim for reinstatement of temporary total disability benefits, as well as penalties and attorney fees.
Trial was held on July 1, 1993, and judgment awarding Adams SEB based upon zero earnings and 26 weeks of vocational rehabilitation was rendered on August 1, 1994. The hearing officer found that the City's reduction of benefits was not arbitrary or capricious and declined to impose penalties or attorney fees. It is from this judgment that the City of Shreveport has appealed.

DISCUSSION

Calculation of Supplemental Earnings Benefits
Defendant, the City of Shreveport, asserts that the hearing officer erred in calculating the SEB due plaintiff, Louis Adams, Jr., based upon a zero wage earning capacity.
For injuries that do not result in total disability, but rather leave an employee unable to earn 90% of his pre-injury wages, LSA-R.S. 23:1221 authorizes SEB. These are based on the difference between the employee's pre-injury wages and
average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience....
If the employee is not engaged in any employment or self-employment ... or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment ... which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or the employer's community or reasonable geographic region.
If the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment. LSA-R.S. 23:1221(3)(a), (c)(i) and (c)(ii).
Once it has been established that the employee's work-related injury has rendered him unable to earn 90% of his pre-injury wages, the employer must show that the employee is physically capable of work and that work was offered or available within a reasonable geographic region. If the employer does so, the employee must then show that he is unable to perform employment offered or available solely as a consequence of substantial pain. Graham v. Georgia-Pacific Corp., 26-165 (La.App. 2d Cir. 09/23/94), 643 So.2d 352; Paul v. Gipson, 614 So.2d 1275 (La.App. 2d Cir.1993).
Adams, who was sixty years old at the time of his accident, was treated for cervical, thoracic and lumbar strain by Dr. James May, Dr. Robert Goodman, and Dr. Austin Gleason. Dr. Gleason opined that Adams *129 was able to return to work on July 15, 1991, with physical limitations and restrictions and that he had reached maximum medical improvement on September 27, 1991. On that date, Dr. Gleason released Adams to return to light work with no repetitive bending, stooping or lifting of more than 30 pounds.
The City retained the services of Chris Tyson, a vocational rehabilitation specialist, to clarify Adams' medical status and determine his vocational potential. In addition to his treating physician's restrictions, Adams' blindness in one eye and third grade education had to be considered.
Because of his physical restrictions, including his limited sight, Adams was unable to return to his position as a heavy equipment operator with the City. The Director of the Department of Public Works, Mike Strong, indicated to Ms. Tyson that there was no light work available. Ms. Tyson then met with Gary Starr of the City's Personnel Department, who indicated that Adams should submit an employment application to be considered for another position. According to Ms. Tyson, Adams informed her that he would not re-apply for employment with the City and that he was not interested in returning to work.
Despite Adams' unwillingness to return to work, Ms. Tyson continued her efforts. A labor market survey conducted in November-December 1991 indicated five available positions within Adams' physical limitations. Ms. Tyson obtained the approval of Adams' treating physician, Dr. Gleason, and personally contacted the potential employers. She then notified Adams of the job positions and offered to help him contact the potential employers. Adams told Ms. Tyson that he was not interested in the jobs she located.
A second labor market survey was conducted by Ms. Tyson in January 1992. Dr. Gleason confirmed that there had been no change in Adams' physical condition as of April 1992. Ms. Tyson testified that Adams continued to be uncooperative and unwilling to work.
Ellen Bartell took over Adams' case in June 1992. She reviewed Ms. Tyson's notes and got an update on Adams' medical status from Dr. Gleason. Following another labor market survey, Ms. Bartell identified five positions within Adams' restrictions. Dr. Gleason approved the job descriptions and Adams was notified. Ms. Bartell noted that Adams expressed no interest in returning to work and that he did not cooperate. Therefore, she recommended that no further efforts at vocational rehabilitation be undertaken.
Based upon the evaluations of Dr. Gleason and the vocational rehabilitation consultants, Adams' temporary total disability benefits were reduced to SEB in May 1992. The City calculated Adams' SEB using the minimum wage as the earnings rate that Adams would have realized had he chosen to return to work.
The hearing officer determined that SEB should be calculated based upon zero earnings. The record does not support this conclusion. The City's vocational rehabilitation consultants took significant steps toward finding work for Adams within his physical restrictions. Adams did not attempt to return to work, but instead expressed an unwillingness to re-enter the labor force. In fact, plaintiff's testimony establishes that he did not apply for any of the positions located for him by Ms. Tyson and Ms. Bartell. The evidence establishes that Adams was capable of returning to work, with limitations, and that such work was available. Adams failed to establish an inability, solely as a consequence of substantial pain, to perform the employment located for him by Ms. Tyson and Ms. Bartell.
The SEB due Adams should be based upon the difference between his pre-injury wages and the wages he is able to earn. The City found that Adams' post-injury earning potential was minimum wage; the record supports this determination.

Vocational Rehabilitation Services
The City of Shreveport's second contention on appeal is that the hearing officer erred in awarding Adams 26 weeks of vocational rehabilitation. The record reflects that the City made extensive efforts to locate employment within the Shreveport area and within Adams' physical restrictions. Adams, however, did not desire to return to work.
LSA-R.S. 23:1226 provides for prompt rehabilitative services when an employee *130 suffers an injury which precludes him from earning an amount equivalent to his pre-injury wage. Since its amendment in 1989, R.S. 23:1226's goal is job placement with a minimum of retraining or education. LSA-R.S. 23:1226; Freeman v. Poulan/Weed Eater, 93-1530 (La. 01/14/94), 630 So.2d 733.
The medical evidence establishes that Adams was able to return to work as early as July 1991 with some physical restrictions. Despite the extensive efforts of the vocational rehabilitation consultants to return Adams to employment, he refused to apply for or even attempt any of the positions located for him. Under these circumstances, further rehabilitative services are not warranted. The hearing officer's award of 26 weeks of vocational rehabilitation services must be reversed.

CONCLUSION
For the reasons set forth above, we REVERSE the hearing officer's award of supplement earnings benefits based upon zero earning capacity and REMAND for calculation based upon the difference between claimant's pre-injury wage and the minimum wage. We also REVERSE the hearing officer's award of 26 weeks of further vocational rehabilitation services.