672 So.2d 330 (1996)
Benjamin TRENCH
v.
HARMONY CONSTRUCTION COMPANY.
No. 95 CA 1851.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
Writ Denied June 7, 1996.
*331 James E. Vinturella New Orleans, for Appellant, Benjamin Trench.
Douglas K. Williams, Baton Rouge, for Appellee, Harmony Construction Co.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
GONZALES, Judge.
This is an appeal by an employee from a judgment of the Office of Workers' Compensation, granting the employer's motion for involuntary dismissal based on the provisions of La.R.S. 23:1208.1.

FACTS AND PROCEDURAL HISTORY
On July 24, 1992, Benjamin Trench, the plaintiff, injured his back while working as a pipefitter for Harmony Construction Company (Harmony). Trench was diagnosed with a central disc herniation with central stenosis at the L3-L4 level; broad-base herniation at the L4-5 level with central and bilateral foraminal stenosis and possible extrusion to the right of the midline; and broad-base bulging of the annulus asymmetric toward the right side with a possible focal extrusion at the L5-S1 level.
On October 22, 1992, Dr. Carlos R. Gorbitz performed a decompressive lumbar laminectomy from the L3 level to the S1 level and diskectomies at the L3-4 and L5-S1 levels.
Harmony paid temporary total disability benefits to Trench from July 24, 1992 through January 18, 1994. As of January 19, 1994, Harmony reduced Trench's benefits to supplemental earnings benefits. On February 1, 1994, Trench filed a disputed claim for compensation with the Office of Workers' Compensation, claiming that Harmony arbitrarily and capriciously reduced his benefits.
During the course of litigation, Harmony discovered that, in completing forms as part of his applications for employment at Harmony, Trench had untruthfully answered questions regarding his medical history. Trench's medical history indicated that he had previously sustained injuries to his back in 1983 and in 1989. Following the 1983 injury, Trench underwent a CT scan of the lumbar spine which revealed a suspected mild disc space bulging at the L4-5 and L5-S1 levels, but no evidence of disc herniation. Following the 1989 injury, Trench underwent an MRI of the lumbar spine which revealed multi-level spinal stenosis from levels L3 through S1, central L3-4 herniated nucleus pulposus, disc protrusion with marginal spondylosis at levels L4-L5 and L5-S1, and multi-level neural foraminal encroachment at levels L3, L4, and L5. Although his neurosurgeon advised Trench in early March of 1990 to undergo surgery to correct his herniated disc problem, the surgery was not performed. The neurosurgeon's notes indicate that Trench cancelled the surgery at the instruction of his attorney.
The record indicates that Trench applied for employment with Harmony on March 20, 1990, and on May 15, 1992. On both occasions, Trench was required to complete forms containing inquiries about his medical history; and on both occasions, Trench answered "no" to questions asking if he was bothered with or had ever had "a back injury," "a ruptured intervertebral disc," "trouble with [his] back," or if he had "ever been advised or ... [contemplated] having an operation." *332 The forms completed by Trench contained a notice stating that "failure to answer truthfully may result in an employee's forfeiture of [workers'] compensation benefits under [La.] R.S. 23:1208.1."
At trial, Trench admitted that his answers on the pre-employment forms were false and explained that he did not answer truthfully because he knew he could work, wanted to work, and thought that Harmony would not give him a job if he disclosed all his prior injuries.
At the end of the presentation of Trench's case at trial held on January 27, 1995, the hearing officer granted Harmony's motion for involuntary dismissal under the provisions of La.R.S. 23:1208.1 due to Trench's false statements on the pre-employment forms. Trench appeals, claiming that the hearing officer committed manifest error in dismissing his case pursuant to La.R.S. 23:1208.1.

FORFEITURE OF WORKERS' COMPENSATION BENEFITS DUE TO FALSE STATEMENTS REGARDING EMPLOYEE'S MEDICAL HISTORY
Louisiana Revised Statute 23:1208.1 allows an employer to ask prospective or current employees about prior injuries. The statute provides:
Sec. 1208.1. Employer's inquiry into employee's previous injury claims; forfeiture of benefits
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
Section 1208.1 applies to employment-related questioning of an employee or prospective employee, by an employer, concerning a prior injury, when there is no pending workers' compensation claim. Resweber v. Haroil Construction Company, 94-2708 (La. 9/5/95), 660 So.2d 7, 9. The statute results in the forfeiture of a claimant's workers' compensation benefits when (1) the claimant made false statements concerning a prior injury in response to such an inquiry, (2) the false statements are directly related to the medical condition for which the claimant is seeking benefits or to the employer's ability to receive reimbursement from the second injury fund, and (3) the employer has provided contemporaneous notice to the claimant that false statements made in response to the inquiry may result in forfeiture of workers' compensation benefits.
In the present case, it is undisputed that Trench made false statements on Harmony's pre-employment questionnaires regarding his medical history. Further, Trench concedes that Harmony complied with the notice requirements of La.R.S. 23:1208.1. Thus, the issue to be resolved is whether Trench's false statements are directly related to the medical condition for which he is claiming benefits or to Harmony's ability to receive reimbursement from the second injury fund.

RELATIONSHIP BETWEEN FALSE STATEMENTS AND MEDICAL CONDITION FOR WHICH BENEFITS ARE SOUGHT
The hearing officer found that Trench's false statements regarding a lack of prior back injuries were directly related to the back injury for which he presently seeks benefits from Harmony. In oral reasons for judgment, the hearing officer stated:
In terms of related medical condition,... I don't think that we can split L3-4 from L4-5. That's just too small of a split. The man, in 1989 and 1990, was diagnosed albeit with a herniation at L3-4 and only bulges at L4-5 and L5-S1. And then, you *333 get the herniations later, which certainly indicates to me that, even though he had a preexisting disease, it was aggravated by the accident that he had at Harmony. ...
His preexisting condition has been aggravated, accelerated, and now he's got a herniated disc at L4-5 and L5-S1, and they would normally be obligated to pay, if he had answered correctly on this form....
If he had hurt his elbow one time and we're talking about a knee, now, sure, no problem. It's not related. But, you're talking aboutand we're not even talking about a C1 and an L5. We're talking about one disc level. It's definitely medically related. It's definitely a 1208.1 case.
Trench argues that the hearing officer erred in finding a direct relationship between his false statements and his current back injury. Relying on jurisprudence from the third and fourth circuit courts of appeal, Trench argues that there is no direct relationship because Harmony has failed to prove that his previous back injuries made his present back condition inevitable or very likely to occur.
We decline to follow the interpretation of "directly relates" being urged by Trench. A straightforward reading of Section 1208.1 mandates forfeiture simply when the "failure to answer truthfully" directly relate to "the medical condition for which a claim for benefits is made." In this case, Trench failed to answer truthfully about his significant history of back problems, including a recommendation that he undergo surgery for herniated discs. The medical condition for which Trench claims benefits is a back injury for which he was required to undergo a decompressive lumbar laminectomy and multiple diskectomies. It could not be clearer that Trench's failure to answer truthfully is directly related to the medical condition for which he claims benefits.[1]Carter v. Our Lady of the Lake Regional Medical Center, 612 So.2d 805 (La.App. 1 Cir.1992).
The factual findings of a hearing officer in a workers' compensation case cannot be disturbed on appeal absent a finding of manifest error. Blanchard v. Federal Express Corporation, 95-0349 (La.App. 1 Cir. 11/9/95), 665 So.2d 11, 13. Further, a dismissal based on a motion for involuntary dismissal should also not be reversed absent manifest error. Hutzler v. Cole, 93-0486 (La.App. 1 Cir. 3/11/94), 633 So.2d 1319, 1324, writ denied, 94-0850 (La. 5/13/94), 637 So.2d 1070. We find no manifest error in the hearing officer's judgment, granting Harmony's motion for involuntary dismissal pursuant to the provisions of La.R.S. 23:1208.1.

DECREE
For the foregoing reasons, the judgment of the hearing officer is AFFIRMED at Trench's costs.
NOTES
[1] Because we affirm the judgment of the hearing officer based on the direct relationship between Trench's false statements and the medical condition for which he is claiming benefits, we need not address whether the false statements affected Harmony's ability to receive reimbursement from the second injury fund.