673 So.2d 349 (1996)
Cheryl NOVEH
v.
BROADWAY, INC. d/b/a K Bar B.
No. 95 CA 2081.
Court of Appeal of Louisiana, First Circuit.
May 10, 1996.
*350 Charles M. Lanier, Jr., New Orleans, for Appellant, Broadway, Inc. d/b/a K Bar B.
William M. Magee, Covington, for Appellee, Cheryl Noveh.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
GONZALES, Judge.
In this appeal, an employer challenges a judgment of the Office of Workers' Compensation, awarding the partial cost of a college education as rehabilitation services to the claimant, and assessing penalties and attorney fees against the employer. The claimant answers the appeal, contesting the dismissal of her claim for temporary total disability benefits during the period of her rehabilitation, *351 and seeking an additional award of attorney fees.

FACTS AND PROCEDURAL HISTORY
Cheryl Noveh, the claimant, was injured in the course and scope of her employment as a program director at K Bar B, a residential treatment facility for delinquent youths owned by Broadway, Inc. d/b/a K Bar B (Broadway). Noveh subsequently filed a claim for supplemental earnings benefits (SEBs), and on December 16, 1993, the hearing officer awarded SEBs to her in the amount of $153.33 per week from January 23, 1993 and continuing weekly. With the addition of legal interest on past due payments, the amount of SEBs was affirmed by this court, Noveh v. Broadway, Inc., 94-0925 (La. App. 1 Cir. 4/7/95), 655 So.2d 816, writ denied, 95-1176 (La. 6/23/95), 656 So.2d 1020.
Noveh resigned her position at K Bar B on January 13, 1993. She later obtained a part-time telemarketing job (20 hours/week) and enrolled to take classes at Southeastern Louisiana University. In August of 1993, Noveh quit the telemarketing job to pursue a full-time college education.
By letter dated September 13, 1994 to Broadway's workers' compensation insurer, Noveh's attorney requested reimbursement for the cost of Noveh's first full year of college, as rehabilitation services. Upon Broadway's or the insurer's refusal to pay, Noveh filed a second disputed claim for compensation, on October 31, 1994, seeking payment for rehabilitation services from Broadway.
Following a trial held on May 24, 1995, the hearing officer rendered judgment (1) against Noveh on her claim for temporary total disability benefits during the period of rehabilitation, and (2) in favor of Noveh on her claim for rehabilitation services, awarding her the cost of a 4-year college program, and 52 weeks of the cost, not to exceed $13,949.33, to be paid by Broadway. The hearing officer also found that Broadway acted arbitrarily, capriciously, and without probable cause in failing to pay for Noveh's chosen long-term retraining, and assessed $2,000.00 in penalties and $3,000.00 attorney fees against Broadway.
Broadway appeals the hearing officer's judgment, asserting the following assignments of error:
1. The hearing officer erred in awarding retraining costs to the claimant.
2. In the alternative, the hearing officer erred in her calculation of the cost of the retraining program.
3. The hearing officer erred in awarding items not recoverable as retraining costs and items not supported by the evidence.
4. The hearing officer erred in finding Broadway arbitrary and capricious and awarding penalties and attorney fees.
In her answer to the appeal, Noveh claims the hearing officer was clearly wrong in dismissing her claim for temporary total disability benefits and seeks an additional award of attorney fees for time spent defending and prosecuting this appeal.

ENTITLEMENT TO TEMPORARY TOTAL DISABILITY BENEFITS DURING REHABILITATION PERIOD
In her reasons for judgment, the hearing officer found that "there was no evidence presented that claimant's disability had deteriorated rendering claimant temporarily and totally disabled whereas she cannot engage in any type employment." Based on this finding, the hearing officer rendered judgment, denying Noveh's claim for temporary total disability benefits.
A determination regarding a claimant's entitlement to workers' compensation benefits is a factual finding. Brooks v. Leggett & Platt, Inc., 94-0617 (La.App. 1 Cir. 11/9/95), 665 So.2d 432, 435-436. Jurisprudence clearly establishes that the appropriate standard of review of factual findings in workers' compensation cases is the "manifest errorclearly wrong" standard. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 1/14/94), 630 So.2d 706, 710; Trench v. Harmony Construction Company, 95-1851, p. 2 (La.App. 1 Cir. 4/4/96), 672 So.2d 330.
After a thorough review of the record, we find no manifest error in the hearing officer's denial of Noveh's claim for temporary *352 total disability benefits. We agree that there is no evidence in the record to support such an award.

ENTITLEMENT TO REHABILITATION SERVICES UNDER LA.R.S. 23:1226
An employee is entitled to rehabilitation services when he has suffered an injury compensable under the Workers' Compensation Law which precludes him from earning wages equal to wages earned prior to his injury. La.R.S. 23:1226(A). The goal of rehabilitation services is to return the disabled worker to work, with a minimum of retraining, as soon as possible after the injury occurs. La.R.S. 23:1226(B)(1). Toward this goal, La.R.S. 23:1226(B)(1) provides, in part:
The first appropriate option among the following must be chosen for the worker:
(a) Return to the same position.
(b) Return to a modified position.
(c) Return to a related occupation suited to the claimant's education and marketable skills.
(d) On-the-job training.
(e) Short-term retraining program (less than [26] weeks).
(f) Long-term retraining program (more than [26] weeks but not more than [1] year).
(g) Self-employment.
It is undisputed that the nature of Noveh's injuries preclude her return to the same position or to a modified position at K Bar B. Thus, subparts (a) and (b) of Section 1226(B)(1) are inapplicable.
In its first assignment of error, Broadway argues that the hearing officer erred in finding that Noveh was entitled to rehabilitation services since the evidence at trial demonstrated that she was capable of earning wages equal to or in excess of 90% of her pre-injury wages. However, Subsection A of La.R.S. 23:1226 clearly states that rehabilitation services are warranted when the injury suffered by the employee "precludes the employee from earning wages equal to wages earned prior to the injury[.]" (emphasis added). The December 16, 1993 judgment of the Office of Workers' Compensation awarded Noveh supplemental earnings benefits which means that Noveh was determined to be unable to earn her pre-injury wages. Therefore, she is entitled to rehabilitation services.
Broadway next argues that the hearing officer erred in finding that Noveh was entitled to retraining because retraining was not the first available appropriate option under La.R.S. 23:1226(B)(1). According to Broadway, there were related occupations available under Subsection (B)(1)(c) which were suited to Noveh's education and marketable skills and which should have been chosen prior to retraining under Subsection (B)(1)(e) or (f). We find merit in this argument.
Margo Hoffman, a vocational rehabilitation counselor retained by Broadway to assist Noveh, testified that she first offered her services to Noveh in September of 1993, and at that time, Noveh's attorney declined to allow her to meet with Noveh, because a trial date had been scheduled on Noveh's SEB claim, and the attorney did not want Noveh to meet with Hoffman prior to the trial. However, based on information she was given regarding Noveh's work history, medical history, and other background information, Hoffman was able to determine that there were several vocational alternatives available to Noveh which suited her medical restrictions and her skills and abilities. These positions included a premium auditor, a nurse recruiter, a coordinator/staffer, a telemarketer, a mutual teller, an account analyst, a title abstractor, and a front desk clerk. Hoffman set forth these findings to Broadway in a vocational rehabilitation evaluation report dated September 14, 1993.
Hoffman repeated her labor market research in March of 1995 at the request of Broadway's attorney and determined that Noveh would qualify for several positions, including a dispatcher, a financial clerk, a front office assistant, a front desk clerk, a coordinator/staffer, and a teller. These findings were set forth in Hoffman's supplemental report to Broadway dated March 31, 1995.
In her reasons for judgment, the hearing officer found that Subsection (B)(1)(c) was inapplicable because none of the jobs identified *353 as suitable for Noveh paid at least 90% of her pre-injury wages of $10.00/hour. The hearing officer stated:
Defendant, through Ms. Margo Hoffman, rehabilitation counselor, has identified jobs suitable to claimant's education and marketable skills. The latest job survey prepared by Ms. Hoffman, dated March 31, 1995, lists jobs claimant should be able to perform pursuant to sub-part (c) of R.S. 23:1226(B)(1). However, keeping in mind claimant is entitled to SEBs, none of those jobs, if performed by claimant, produces at least 90% of her per-injury [sic] wages. The highest paying job was that of a Financial Clerk with a pay range of $7.67 to $9.38 per hour. Assuming claimant accepted this job, her average pay would be $8.32 per hour, less than 90% of the $10.00 per hour she was earning prior to her injury. Therefore, sub-part (c) is also inapplicable.
We find that the hearing officer misinterpreted Section 1226 by determining that the suitable employment available to a claimant under Subsection (B)(1)(c) must pay wages equal to the disabled worker's pre-injury wages in order to qualify as an appropriate rehabilitation service. According to La.R.S. 23:1226(A), rehabilitation services are only available to a disabled worker if he is unable to earn wages equal to his pre-injury wages. Therefore, it is not necessary that a rehabilitative position found for a disabled worker under La.R.S. 23:1226(B) pay as much as the worker made before his injury, because if such were the case, the worker would not be entitled to rehabilitation services in the first place. The fact that Noveh was being paid SEBs does not mandate that a rehabilitative position pay her what she made prior to her injury. Her receipt of SEBs and $10.00/hour would have her earning more than she made before her injury.
Where the trial court commits legal error by applying an incorrect legal standard, this court is required to determine the facts de novo from the entire record and render a decision on the merits. Gentile v. Baton Rouge General Medical Center, 95-0348 (La.App. 1 Cir. 11/9/95), 665 So.2d 422, 431.
Since its amendment in 1989, the goal of La.R.S. 23:1226 has changed. Formerly, the purpose of the statute was to educate the disabled employee, and by doing so, to increase the job marketability of employees who, due to their injuries, cannot return to their former positions. Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733, 739. However, since its 1989 amendment, La.R.S. 23:1226's goal is job placement with a minimum of retraining or education. Adams v. City of Shreveport, 27,284 (La.App. 2 Cir. 8/23/95), 660 So.2d 127, 130, writ not considered, 95-2433 (La. 12/8/95), 664 So.2d 417.
The evidence establishes that Noveh was able to work, albeit with restrictions, following her injury, as is evidenced by her return to work at K Bar B until January of 1993, and by her working as a telemarketer until August of 1993, when she decided to return to school full-time without working. Noveh refused the vocational rehabilitation services of Ms. Hoffman multiple times, choosing instead to pursue a full-time college education. Although Noveh cannot be faulted for attempting to further her education, by the same token, Broadway cannot be penalized because Noveh made a personal choice to pursue education rather than a vocation.
In light of Section 1226's goal to achieve job placement for a disabled worker through rehabilitative services rather than to educate the worker for increased job marketability, we find that the hearing officer's judgment, awarding Noveh the cost of a 4-year college program, constitutes legal error which must be reversed. Concomitantly, we also find that (1) the hearing officer's assessment of penalties and attorney fees against Broadway must be reversed, and (2) Noveh's claim for additional attorney fees on appeal must be denied. Because we reverse the judgment based on Broadway's first assignment of error, we need not address the issues raised in the remaining assignments of error.

*354 DECREE
For the foregoing reasons, the judgment of the Office of Workers' Compensation is REVERSED. Costs of this appeal are assessed to Cheryl Noveh.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring.
I concur in the result. Plaintiff's counsel refused to let his client participate in the rehabilitation process, while asking, in essence, that his client be exempted from the requirement of choosing the first appropriate option listed in La.R.S. 23:1226(B)(1). Plaintiff's plan was to ignore options (a)-(e) in La.R.S. 23:1226(B)(1), and select (f) outright. Without Ms. Noveh's input, the rehabilitation process was interdicted in this case.
The hearing officer agreed to the interdiction of the process by approving Ms. Noveh's choice of a 4 or 5 year degree program as retraining, and awarding the maximum under the statute, the cost of 52 weeks of retraining. The hearing officer committed error by failing to recognize that the procedures mandated by La.R.S. 23:1226 had been short circuited.
The goal of section 1226 is to return the worker to the productive workforce, as soon as possible, with "a minimum of retraining...." La.R.S. 23:1226(B)(1). If the worker is able to earn an equal or higher wage, the rehabilitation process should be deemed a success. Many available educational programs could qualify as retraining programs, but that choice would be appropriate only after a rehabilitative process that included actual consideration of the other options listed first. If options in section 1226(e) or (f) were eventually determined to be appropriate, the most likely choices would be retraining or school programs that concluded in 26 or 52 weeks. These programs would allow the worker to get back into the productive force as soon as the program was complete. No actual review of available programs was done. Under the circumstances here, I fail to see how a four or possibly five year college program can qualify as the first appropriate option under the statute. It would significantly delay Ms. Noveh's reentry into the work force, not expedite it. It certainly does not meet the stated goal of "a minimum of retraining...." La.R.S. 23:1226(B)(1).