682 So.2d 1264 (1996)
Willie Gene WILSON, Plaintiff-Appellee,
v.
GROSJEAN CONTRACTORS, INC., Defendant-Appellant.
No. 28831-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1996.
Rehearing Denied December 5, 1996.
*1266 Eskridge E. Smith, Jr., Bossier City, for Defendant-Appellant.
Mills, Timmons & Flowers by William T. Allison, Shreveport, for Plaintiff-Appellee.
Before MARVIN, C.J., and WILLIAMS and CARAWAY, JJ.
MARVIN, Chief Judge.
In this workers' compensation action, Grosjean Contractors, Inc. appeals the WCHO's award of temporary total disability benefits to its employee, Willie G. Wilson, and assessment of penalties and attorney fees. Wilson has answered, seeking additional attorney fees for work done on appeal.
We amend to delete the WCHO's awards and to award only supplemental earnings benefits, and affirm, as amended.

FACTS
Employed by Grosjean as a roofer's helper at $8 per hour with an average weekly wage of $320, Wilson injured his back on Friday, March 4, 1994, on a job at Angola State Prison. He was in the back of a dump truck passing roofing material to co-workers on the roof during misting rain, when he slipped on a piece of insulation and fell in the truck bed.
Although Wilson felt like he "pulled something" and was in pain, he worked the remainder of the day before traveling with the work crew from Angola to Shreveport later that day. Although he rode with his job foreman, Mr. Thurmon, Wilson did not report the accident to him, as required by Grosjean procedures. Wilson testified that he told a co-worker about his accident, but did not inform Thurmon, who, Wilson said, was "difficult" to talk to.
Wilson awoke Saturday morning in pain, unable to stand straight. On Monday, March 7, 1994, Wilson reported his injury to his supervisor, Ron Cox, asking to see a doctor.
Cox sent Wilson to Dr. Tony Alleman, who saw Wilson March 7 and March 9, 1994, sending him back to limited work and instructing him to refrain from lifting any heavy objects. Wilson did not thereafter return to work for Grosjean.
Wilson's attorney referred him to Dr. Robert Holladay. On March 28, 1994, Dr. Holladay diagnosed Wilson with myoligamentous strain and sprain of the lumbar spine and advised him to remain off work activities that require bending, heavy lifting, climbing, crawling, stooping or twisting. Dr Holladay continued to treat Wilson through August of 1994. On August 10, 1994, Dr. Holladay released Wilson to return to light to medium level work with restrictions against repetitive bending and lifting objects over 35 pounds. After being released to work by Dr. Holladay, Wilson unsuccessfully sought employment at several places during August 1994.
Grosjean engaged Ken Brister, a vocational rehabilitation counselor, to assess Wilson for appropriate employment positions. Brister met with Wilson in September 1994 to learn Wilson's educational background, work history, hobbies and interests. Wilson told Brister that he had some limited experience cutting hair and wanted to become a barber.
*1267 Brister then located potential jobs for Wilson that were within the physical restrictions outlined by Dr. Holladay. Brister conducted four different labor market surveys, locating 14 possible jobs, the details of which Brister related to Wilson through his attorney.
In November 1994, Brister identified positions for Wilson as a security guard, service station attendant and janitor. In January 1995, Brister found other possible jobs for Wilson as a counter sales person, service adviser and customer service representative. Positions as a desk clerk, security officer, parts runner, oil change technician and cashier were identified in March 1995. Finally, in April 1995 Brister found possible employment for Wilson as a customer service representative, counter salesman and in telephone sales. Brister opined that Wilson was suited for each of these prospective positions based upon his education, work experience and the interview conducted in September of 1994.
Wilson received the several job lists, but did not formally make application for the positions. Wilson telephoned some of the prospective employers rather than making a written application. Wilson said he lacked transportation to personally seek the employment. Brister offered to assist Wilson in applying for these jobs, but Wilson neither requested any help nor reported that he found any of the offered positions unsuitable. Significantly, Wilson refused to inquire about jobs that would not pay him as much as he earned before his accident.
Because he expressed an interest in becoming a barber, Brister investigated retraining Wilson for that profession. Brister determined that barber training school would take 14 months. In addition, Brister found Wilson's beginning earnings, after expenses, would be less than he earned before his accident.
Grosjean paid Wilson temporary total disability benefits ("TTDs") from March 4, 1994, until October 1994, when it reduced the TTDs to supplemental earnings benefits ("SEBs"), based upon a post-injury earning capacity of $6 per hour in the potential jobs located by Brister. Wilson filed a claim with the OWC on December 14, 1994, asserting Grosjean failed to provide meaningful vocational rehabilitation and wrongfully reduced his benefits.
The WCHO held an administrative hearing on November 14, 1995. Finding that Grosjean wrongfully reduced the TTDs to SEBs, the WCHO awarded Wilson TTDs from October 1, 1994, until he completes a retraining program, approved as barber training school. The WCHO held that Grosjean failed to provide meaningful vocational rehabilitation services to Wilson and ordered Grosjean to provide a long-term retraining program, up to one year. Lastly, the WCHO found Grosjean arbitrary and capricious and assessed penalties of $50 per day for every day that Wilson's benefits were reduced, up to $2,000, and awarded attorney fees of $5,000. Grosjean appealed and Wilson answered.

DISCUSSION

Accident in the Course and Scope of Employment
Grosjean contends Wilson failed to prove that he suffered a disabling accident in the course and scope of his employment. Grosjean argues that Wilson repeatedly claimed he strained his back lifting roofing materials, then testified that he slipped and fell for the first time at the hearing. Grosjean emphasizes Wilson's failure to follow its requirements for reporting an accident and his failure to produce a co-worker at the hearing to corroborate his version of events.
Wilson's burden is to prove by a preponderance of the evidence that his disability is related to an on-the-job injury. Walton v. Normandy Village Homes Ass'n Inc., 475 So.2d 320 (La.1985); Stevens v. Wal-Mart Stores, Inc., 27,977 (La.App.2d Cir. 11/1/95), 663 So.2d 543. Proof is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Id. Wilson must show that his employment somehow caused or contributed to his disability, but he need not establish the exact cause. Id.
Wilson has consistently urged that he injured himself while working for Grosjean, handing up rolls of roofing material from the *1268 bed of a truck to coworkers on the roof. Although he did not immediately report the incident to a foreman that he thought was difficult to talk to, he informed his supervisor the very next work day and asked to see a doctor. We see no abuse of the WCHO's discretion in accepting Wilson's explanation. We cannot say, based on this record, that the WCHO's finding of a work-related accident was clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
Grosjean also complains of the WCHO's failure to make a specific finding that Wilson suffered a disabling accident in the course and scope of his employment. A finding that Wilson suffered a disabling, work-related accident is implicit in the WCHO's award of benefits. We find no error.

What Benefits?
The WCHO found that Grosjean wrongfully reduced Wilson's TTDs to SEBs and awarded TTDs from October 1, 1994, until Wilson completes an approved plan of vocational rehabilitation at a barber training school. Grosjean contends Wilson is not temporarily totally disabled.
Compensation for temporary total disability shall be awarded "only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that [he] is physically unable to engage in any employment or self-employment,... including ... employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment." La. R.S. 23:1221(1)(c); emphasis added. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Louisiana State Bar Ass'n v. Edwins, 329 So.2d 437 (La.1976); Green v. Conagra Broiler Co., 26,599 (La.App.2d Cir. 3/1/95), 651 So.2d 335.
Dr. Holladay, the treating physician, released Wilson to return to light to medium level work on August 10, 1994. Wilson began seeking employment that same month, applying for work at several locations. In November 1994, Wilson sought, albeit selectively, jobs located by Brister.
Wilson does not controvert Grosjean's assertion that he is physically able to perform light to medium level work. At the hearing, he admitted seeking work at several places, as early as August 1994, and testified that he actively conducts his own job searches. Wilson offered a variety of reasons for neglecting or declining to apply for several of the jobs located by Brister. Wilson's reasons, however, do not include an assertion that he is physically unable to perform the particular job.
This record does not establish or suggest that Wilson is physically unable to engage in any employment or self-employment. We must find Wilson has failed to prove by clear and convincing evidence that he is physically unable to engage in employment because of pain or the location or availability of a job. He is, therefore, not entitled to TTDs under § 1221(1)(c). The WCHO's award of TTDs was clearly wrong under the statute.
Having found Wilson failed to prove entitlement to TTDs, we shift our focus to whether he is entitled to SEBs. SEBs are governed by La. R.S. 23:1221(3), which provides in pertinent part:
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience ...

* * * * * *

*1269 (c)(i) ... if the employee is not engaged in any employment or self-employment, ... the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, ... which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region. (Emphasis added.)
This record contains neither evidence that Wilson can perform his previous job duties of a roofer's helper, nor evidence of any offered or available employment consistent with Wilson's capabilities which pays at least 90 percent of his pre-injury wages. Wilson is entitled to SEBs.
Under this record, Wilson's inability to earn 90 percent of the wages that he earned as a roofer's helper is established. We also find, however, no evidence that Wilson is unable to earn any wages. Accordingly, we shall not calculate SEBs based upon zero earning capacity. The SEBs due Wilson should be based upon the difference between his pre-injury wage and the wage he is able to earn. La. R.S. 23:1221(3); Adams v. City of Shreveport, 27,284 (La.App.2d Cir. 8/23/95), 660 So.2d 127. Grosjean paid Wilson SEBs calculated upon a post-injury earning capacity of $6 per hour, according to the jobs located by Brister. Based upon the proven availability and the wage of jobs suitable to Wilson's education and work experience, we shall not disturb the amount of the SEBs based on $6 per hour earning capacity. See and compare Hinton v. Scott Hydraulics, Inc., 614 So.2d 820 (La.App. 2d Cir. 1993), and Adams v. City of Shreveport, supra.
Grosjean began paying Wilson SEBs in October 1994. Arguably, it could have reduced Wilson's benefits to SEBs as of the date that his treating physician released him to work, sooner than October 1994. Concluding this issue, we shall amend to award Wilson supplemental earnings benefits in the amount being previously paid by Grosjean, beginning October 1, 1994.

Vocational Rehabilitation Services
The WCHO found that Grosjean failed to provide meaningful vocational rehabilitation services. The vocational rehabilitation statute, La. R.S. 23:1226, provides in pertinent part:
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
B. (1) The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs. The first appropriate option among the following must be chosen for the worker:

(a) Return to the same position.
(b) Return to a modified position.
(c) Return to a related occupation suited to the claimant's education and marketable skills.

(d) On-the-job training.
(e) Short-term retraining program (less than twenty-six weeks).
(f) Long-term retraining program (more than twenty-six weeks but not more than one year).
(g) Self-employment.
(2) Whenever possible, employment in a worker's local job pool must be considered and selected prior to consideration of employment in a worker's statewide job pool.
(3) The employer shall be responsible for the selection of a vocational counselor to evaluate and assist the employee in his job placement or vocational training. Should the employer refuse to provide these services, the employee may file a claim with the office to review the need for such services in the same manner and subject to the same procedures as established for dispute resolution of claims for worker's compensation benefits. (Our emphasis.)
By Act No. 454 of 1989, the Louisiana legislature amended the rehabilitation provisions of *1270 § 1226. Before the amendment, this court stated in Works v. Trinity Universal Ins. Co., 501 So.2d 1045 (La.App. 2d Cir.1987), that the objective of rehabilitation was to educate and increase the job marketability of employees who cannot return to their former positions. The amended statute no longer extensively relies on vocational education and instead seeks a minimum of retraining. Subsection (B)(1). The statute also provides that if the claimant is able to return to his old position, to a modified position, or to a related occupation suited to his education and marketable skills, vocational training is not authorized. Green v. Conagra Broiler Co., supra. The amendment apparently was primarily aimed at overruling such cases as Works, supra. See Johnson, Workers' Compensation, 50 La. L.Rev. 391, 401 (1989); Green v. Conagra Broiler Co., supra.
While Wilson is thus entitled to prompt rehabilitation services under § 1226(A), we must next determine whether Grosjean has satisfied its obligation under the requirements of rehabilitation enumerated in § 1226(B).
Wilson maintains that section 1226 requires Grosjean to find Wilson a job returning him to 100 percent of his pre-injury wage or, otherwise, it must retrain him. We disagree. It is not necessary that a rehabilitative position found for a disabled worker under section 1226(B)(1) pay as much as the worker made before his injury. Noveh v. Broadway, Inc., 95,2081 (La.App. 1st Cir. 5/10/96), 673 So.2d 349. If § 1226(B) required an employer to place an injured employee in a job paying 100 percent of his pre-injury wages, then the SEB provisions would effectively be written out of the workers' compensation statute. We cannot say that the legislature intended that result when it adopted the amendment to § 1226.
Considering that the goal is to return a disabled worker to employment with a minimum of retraining, rather than to educate the worker for increased job marketability, the logical reconciliation of § 1226 with the SEB provisions is that a claimant is entitled to vocational rehabilitation under § 1226(A) if he is unable to earn 100 percent of his pre-injury wages in potential jobs that are thereafter located for the claimant through rehabilitation efforts under § 1226(B). If none of the jobs located through these rehabilitation efforts can return the claimant to at least 90 percent of his pre-injury wages, then the claimant's income must be supplemented with SEBs in accordance with § 1221(3).
Through the efforts of Brister, Grosjean took significant steps toward finding work for Wilson within his physical restrictions. Brister conducted four different labor market surveys, producing 14 possible positions. Brister sent four letters to Wilson's attorney, identifying the prospective jobs. In addition, each letter to Wilson's attorney contained the following offer: "Should Mr. Wilson desire assistance in making application to any of the above positions, please have him contact me as I will be happy to assist him."
Wilson failed to personally apply for any of the positions identified by Brister. He testified that he simply telephoned some of the potential employers instead of applying for the job in person because he lacked transportation. However, Wilson neither notified Brister about his lack of transportation nor requested any assistance, despite Brister's offers to assist him. Moreover, Wilson's explanation that he declined to apply for several of the offered jobs because they would not pay him 100 percent of his pre-injury wage is found wanting.
The statute is clear. The "first appropriate option" enumerated under § 1226(B)(1) must be chosen. Under the circumstances, we find that option (c), [returning the claimant to "a related occupation suited to the claimant's education and marketable skills"] is the first appropriate option in this case. Grosjean fulfilled its obligation by finding and identifying numerous related occupations suited to Wilson's education and marketable skills. Despite these efforts, Wilson demonstrated an unwillingness to re-enter the workforce, refusing to even apply for many of the positions located for him. In these circumstances, further rehabilitative services are not warranted. Adams v. City of Shreveport, supra.
*1271 The WCHO erred in finding that Grosjean failed to provide meaningful vocational rehabilitation and ordering that Grosjean provide further rehabilitation, approved as barber training school. The WCHO improperly weighed Grosjean's rehabilitation obligation under the statute. We amend the WCHO's decision to delete the order that Grosjean provide further vocational rehabilitation.

Penalties and Attorney Fees
Because we delete the WCHO's award of TTDs and the order to Grosjean to provide further vocational rehabilitation, we also delete the WCHO's assessment of penalties and attorney fees. Concomitantly, Wilson's demand for additional attorney fees on appeal is denied.

DECREE
We affirm the WCHO's finding that Wilson proved a disabling accident within the course and scope of his employment, but amend the decision to delete the awards of temporary total disability benefits and for further vocational rehabilitation and the assessment of penalties and attorney fees. We amend to award Wilson supplemental earnings benefits from October 1, 1994, calculated upon a post-injury earning capacity of $6 per hour. We deny Wilson's request for additional attorney fees for work done on appeal.
As amended, the decision of the WCHO is affirmed. Costs of the appeal are to be assessed one-half to Wilson and one-half to Grosjean.
AMENDED AND, AS AMENDED, AFFIRMED.
APPLICATION FOR REHEARING
Before MARVIN, NORRIS, HIGHTOWER, WIILIAMS and CARAWAY, JJ.
Rehearing denied.